[No. 1651-1. Division One. December 28, 1973.]

THE CITY OF REDMOND, *Respondent*, v. GEORGE KEZNER *et al.*, *Appellants*.

*Boyd, Decker & Hanson* and *Richard L. Evans*, for appellants.

*John D. Lawson, City Attorney*, for respondent.

HOROWITZ, J.—Defendants husband and wife appeal a decree ordering defendant husband, George Kezner, to specifically perform his written agreement to convey certain of his separate real property to plaintiff City of Redmond, the agreement being contained in a street system agreement to which defendant husband and other property owners are parties. The trial court rejected defendants' contentions that the agreement was an illegal relinquishment of the city's legislative power or, alternatively, the city had disentitled itself from obtaining specific performance by its anticipatory repudiation of the obligations of the agreement.

Defendants assign no error to the findings. The certified statement of facts does not contain the testimony received at trial. The statement of facts contains only the court's oral opinion and exhibits. The controlling facts shown by the findings and the statement of facts consistent with those findings are the following. References to defendant refer only to defendant husband.

Shortly prior to June 26, 1964, various property owners, including defendant, signed a petition to have their then

unimproved property rezoned from agricultural (A) to medium-commercial (CM). Prior to that date, the city had adopted a comprehensive plan calling for commercial use of the area described in the plan, including the area covered by the rezoning petition. Following the adoption of the comprehensive plan and prior to June 26, 1964, the city had itself determined that the commercial development of the area required the establishment of a street system for traffic and utility installation purposes. It thereupon prepared a proposed "Street System Agreement," a copy of the material portion of which is placed in the margin.[1] The property owners, including defendant, signed that agreement.

On July 29, 1964, the previously signed rezoning petition was filed with the City of Redmond. The City Council then enacted ordinance No. 349 granting the petition. The court found that "the street-system agreement and the rezoning ordinance were concomitant documents." Finding of fact No. 5.

---

[1]"WE, THE UNDERSIGNED, being owners of property lying within the following described area:

That portion of the E ½ of the SE ¼ of Sec 2, T 25 N, R 5 E, WM, lying westerly of 164th Avenue N.E. (AKA Redmond-Woodinville Road); EXCEPT the south 1595.2 feet thereof, situate in the City of Redmond, King County, Washington

and having signed a petition of the City of Redmond for the rezoning of said property from Agricultural (A) to Medium Commercial (CM); and

"Realizing that the commercial development of the area will require the establishment of a street system within the area for the internal circulation of traffic and installation of utilities and that the determination and establishment of such a street system is in the mutual interests of the several property owners concerned; Now, THEREFORE,

"It Is HEREBY AGREED that the attached drawing, showing the route, location and plan of a proposed street system within the above described area, is hereby accepted and approved; and each of the several owners do hereby agree for themselves, their successors and assigns, as a covenant running from each other and to the City of Redmond, that they will deed and dedicate such portion or portions of their property as will be necessary for the establishment of such streets to the City of Redmond for street and highway purposes when requested to do so; provided, however, that such area is rezoned CM." (Signatures excluded.)

Subsequent to 1964, several meetings were held between the property owners concerned and the city officials concerning the street system plan. In 1967, a proposed Street Plan A was developed. There is no finding that the plan was adopted by the city. Plan B was later developed. On April 2, 1968,

> the Redmond City Council passed a motion to adopt Street Plan B, which contained several material changes over Plan A and the original plan attached to the Street System Agreement.

Finding of fact No. 6.

In the latter part of 1968 and early 1969, following the adoption of the April 2, 1968, motion, several owners of property in a large commercially zoned area, which included the area rezoned by ordinance No. 349, formed a local improvement district to improve certain streets within the entire area. These included certain streets in the area rezoned by ordinance No. 349. On February 11, 1969, pursuant to a petition to which defendant was not a party, the Redmond City Council adopted ordinance No. 486. It ordered

> the formation of a local improvement district (LID 69-ST-14) for the construction of streets and utilities upon a portion of the internal street system. The LID called for the improvement of a portion of the streets contained in the original Street System Agreement and was a partial implemantation [*sic*] of Plan B, and materially altered the plan by calling for the improvement of some different streets than those contained in the original street plan or in Plan A.

Finding of fact No. 7. We later discuss the changes referred to in the finding.

Several of the property-owner parties to the June 26, 1964, street system agreement, upon the city's request, conveyed and dedicated the necessary rights-of-way for the establishment and improvement of the streets as contem-

plated by LID 69-ST-14. Defendant Kezner refused. Finding of fact No. 8.

The court concluded that:

> The Street System Agreement . . . constituted a concomitant agreement with the rezoning of the respective properties . . . The rezoning by the City furnished the consideration for the undertakings of the property owners in the Street System Agreement . . . The City fully performed its part of the agreement by the rezoning of the subject properties . . . and had the right . . . to require the performance by the property owners to deed and dedicate the necessary street rights-of-way when requested to do so by the City. The City has not breached the agreement and it is not necessary that the City be required to improve all of the streets contemplated at one time and it is inherit [sic] that the City would need time to determine descriptions, to acquire deeds to the street rights-of-way and develop necessary financing and construction details.

Conclusion of law No. 2. The court concluded also the city was entitled to specific performance of defendant's agreement, which included the conveyance of "30 feet of the right-of-way for the development of N.E. 87th Street . . . in furtherance of the street-system agreement and was not requesting the defendant George Kezner to deed something which was not a part of the agreement." Conclusion of law No. 3. The court then entered the decree for specific performance from which defendants appeal.

 Defendants assign error to the entry of portions of conclusions of law No. 2 and 3 and in concluding the street system agreement was not "void as an unlawful delegation of legislative discretion and power." Assignment of error No. 4. Defendants further assign error to the court's dismissal of their counter claim for damages. The last assignment of error is not argued and must be considered abandoned. *State v. J-R Distribs., Inc.*, 82 Wn.2d 584, 512 P.2d 1049 (1973); *Dickson v. United States Fidelity & Guar. Co.*, 77 Wn.2d 785, 466 P.2d 515 (1970); *Daggett v. Tiffany*, 2 Wn. App. 309, 467 P.2d 629 (1970).

We first consider and uphold the legality of the June 26,

1964, street system agreement. The findings show the property owners, including defendant, were desirous of rezoning their then unimproved property from agricultural to medium-commercial, a rezoning consistent with the comprehensive plan theretofore adopted by the city. It fairly appears the city, after the signing but prior to the filing of the rezoning petition, insisted that, as a condition of the city rezoning the property, the owners agree to the city's proposed street system plan and further agree, upon the city's request, to deed and dedicate certain of their lands to the city to help put the plan into effect. The city's insistence is explained by a recital in the agreement that the system was required "for the internal circulation of traffic and installation of utilities . . ." The agreement in form did not expressly require the city to rezone, nor provide as to how or when the street improvements would be installed and at whose expense. The agreement, including the owners' obligations as therein set forth, was, however, expressly conditioned upon the area being rezoned medium-commercial. The property owners signed the agreement. The city performed the condition and then later demanded the signatory property owners, including defendant, convey and dedicate the land therein described as agreed. Defendant alone refused.

Defendant defends his refusal on the ground the concomitant street system agreement is void as illegal. He treats the agreement as one requiring the city to rezone the property and to perform and implement the street system plan. He argues that by the agreement the city has bargained away its legislative power for the sole benefit of private persons from whom a consideration has been exacted, namely, the conveyance and dedication of parts of their land. We do not agree. We agree with the trial court that the holding and rationale of *State ex rel. Myhre v. Spokane*, 70 Wn.2d 207, 422 P.2d 790 (1967), requires we uphold the legality of the agreement.

■ The *Myhre* case involved the validity of an ordinance amending the comprehensive zoning ordinance of the

City of Spokane so as to reclassify certain property from " 'R1' One-Family Residence Zone" to " 'B2' Community Business Zone." At the time the amendatory ordinance was adopted, the city entered into a concomitant zoning agreement with the owners of property in the reclassified area. Subsequently, certain residential property owners of the city brought an action to attack the validity of the amendatory ordinance as ultra vires. The court rejected the attack. It described the agreement it upheld to include the following:

> The agreement recognized that the shopping center would increase the flow of traffic around its perimeter, which would entail widening the streets for traffic safety, and the parties agreed that the sum of $75,000 represented
>> a fair estimate of the cost of completing the improvements . . . necessitated by the aforesaid rezoning. This sum shall represent the total responsibility of the Company for the accomplishment by the City of the street improvements . . . . From and after date of receipt thereof such funds shall be *conclusively and irrevocably committed to finance said improvements* . . . .
>>
>> . . . .
>> 3. Construction of the planned shopping center as one unit together with all ground improvements are expected to be commenced within two years after the effective date of the ordinance changing the classification . . . . (Italics ours.)
>
> The company agreed to deed to the city without cost, certain of its lands for the widening of the adjacent streets within the city engineer's right-of-way plan for the area. The company agreed to acquire and convey to the city, without cost, additional street area (if any) needed for traffic safety.
>
> The questioned agreement further provides that "the Company shall cause to be constructed at no cost to the City the necessary curbs, sidewalks, drainage, pavement, channelization and street lighting" on certain designated streets, and that "All street improvements, medians and channelizations are to be laid out and constructed satisfactory to the City Engineer and the City Traffic Engineer."

*State ex rel. Myhre v. Spokane, supra* at 213-14. The court explained:

> Widening streets and installing electrical controls for the safety of both pedestrians and vehicular traffic are regulatory measures which are within the proper exercise of the city's police power. When the city requires that the cost of such safety measures be borne by the company, it is not bargaining away its regulatory police power but, rather, determining that the cost should be borne by the persons who created the necessity for the expenditure of such funds, instead of by the city generally. Such a determination is within the city's legislative authority. It follows that a written concomitant agreement resulting therefrom is not ultra vires.

*State ex rel. Myhre v. Spokane, supra* at 216. The court rejected as unsound the line of cases holding that all zoning ordinances which are amended with concomitant agreements are invalid. It then said:

> We hold the better rule to be that, before deciding to amend a zoning ordinance, the city must weigh the benefits which will flow to the public generally against the detriment, if any, to the adjacent property owners or to the public which may result therefrom. An amendment to a zoning ordinance and a concomitant agreement should be declared invalid only if it can be shown that there was no valid reason for a change and that they are clearly arbitrary and unreasonable, and have no substantial relation to the public health, safety, morals, and general welfare, or if the city is using the concomitant agreement for bargaining and sale to the highest bidder or solely for the benefit of private speculators.

*State ex rel. Myhre v. Spokane, supra* at 216.

Defendants claim the *Myhre* case has created some confusion in the law of concomitant agreements. The majority opinion in the later case of *Chrobuck v. Snohomish County,* 78 Wn.2d 858, 480 P.2d 489 (1971), did not discuss the tests of validity or invalidity of such agreements, although Justice Marshall A. Neill's dissenting opinion does so. Defendants apparently agree with the latter's conclusions concerning the test to be applied. For purposes of this appeal, it is

340

unnecessary to do more than to express our agreement with Justice Neill's analysis of the *Myhre* holding. He points out that the *Myhre* concomitant agreement was one "to neutralize any expected negative impact of the proposed property usage," and was not one "which seeks to extract some collateral benefit from the property owner." *Chrobuck* at page 889. The same distinction applies in the instant case. The street system agreement recitals made it clear that the purpose of the agreement was to help in the establishment of a street system within the area to be rezoned "for the internal circulation of traffic and installation of utilities."

In the case here, it is true, the concomitant agreement contains no express promise by the city to rezone. Instead, the agreement is conditioned upon the city rezoning. The distinction, for purposes of the question of validity, is unimportant. If there is no promise to rezone, there is no promise to relinquish legislative power. Defendant argues the matter, however, as if the city had promised to rezone. He also treats the concomitant street system agreement as a promise by the city to install and pay for street improvements conforming to the street plan in that agreement. If the city has made the promises claimed, they are not illegal under the *Myhre* rationale in which the city promised to rezone.

■ Defendant had the burden of proving the agreement was illegal on its face, or illegal as shown by evidence outside the agreement. The parol evidence rule does not exclude parol evidence to establish illegality. *Bond v. Wiegardt*, 36 Wn.2d 41, 216 P.2d 196 (1950); *Auve v. Fagnant*, 16 Wn.2d 669, 134 P.2d 454 (1943); 9 J. Wigmore, *Evidence* § 2406 (3d ed. 1940); 30 Am. Jur. 2d *Evidence* § 1035 (1967). Defendant also had the burden of obtaining a finding supporting his claim of illegality. *McCutcheon v. Brownfield*, 2 Wn. App. 348, 356, 467 P.2d 868 (1970), points out "if there is no express finding upon a material fact, the fact is deemed to have been found against the party having the burden of proof." Neither the findings nor conclusions show

the street system agreement had any purpose other than to benefit the general public in the orderly development of the property in accordance with the theretofore adopted comprehensive plan. The concomitant street system agreement was entirely legal.

Defendants alternatively contend that since April 2, 1968, the city has materially changed the street system agreement, thereby providing defendant with the defense of anticipatory repudiation to the city's suit for specific performance. *Jacks v. Blazer*, 39 Wn.2d 277, 235 P.2d 187 (1951). In support of this contention, defendant relies on portions of findings of fact No. 6 and 7. Finding of fact No. 6 refers to passage of the April 2, 1968, Redmond City Council "motion to adopt Street Plan B, which contained several material changes over . . . the original plan attached to the Street System Agreement." The nature of the changes are not described. The action taken was by resolution and not by ordinance. *Baker v. Lake City Sewer Dist.*, 30 Wn.2d 510, 518, 191 P.2d 844 (1948), distinguishes between a resolution and an ordinance. The court states a resolution

> generally speaking, is simply an expression of the opinion or mind of the official body concerning some particular item of business or matter of adminstration coming within its official cognizance.

The text of the April 2, 1968, motion (which might have a bearing on the question of anticipatory repudiation) is not contained either in the findings or in the record.

Finding of fact No. 7 is more specific in its description of changes. That finding states:

> The LID called for the improvement of a portion of the streets contained in the original Street System Agreement and was a partial implementation [*sic*] of Plan B, and materially altered the plan by calling for the improvement of some different streets than those contained in the original street plan or in Plan A. Two north-south streets, shown on the original street plan, which would bisect and pass through defendant Kezner's property at two locations, were not developed by the City at this time under the LID. However, included within the

streets scheduled for improvement by the LID was N.E. 87th Street, which followed the same alignment and course as contained in the original Street System Agreement, Plan A and Plan B, and required only the north 30 feet of defendant George Kezner's property for this street right-of-way.

At first blush findings No. 6 and 7 appear to support defendant's claim of anticipatory repudiation. However, before so concluding we must also consider other matters.

In the first place, apart from the findings described, there is no express finding the city breached or otherwise repudiated the street system agreement. The omission appears to have been deliberate. The court's oral opinion states, "Bear in mind there is no deviation from the original plan in the development out there so far as it has gone." Conclusion of law No. 2 consistently states:

> The City has not breached the agreement and it is not necessary that the City be required to improve all of the streets contemplated at one time and it is inherit [sic] that the City would need time to determine descriptions, to acquire deeds to the street rights-of-way and develop necessary financing and construction details.

The burden of obtaining the required finding is upon defendant, who claims the benefit of the defense. If the burden is not discharged, "the fact is deemed to have been found against the party having the burden of proof." *McCutcheon v. Brownfield, supra* at 356.

Secondly, statements during oral argument on the question of material plan changes made to explain certain exhibits in the record, in certain instances, were disputed. The statement of facts contains no testimony to enable us to secure an explanation of the exhibits and their application to the facts here. We cannot dispose of this appeal by treating statements made during oral argument on a vital issue as a substitute for evidence required to be brought to us in a properly certified statement of facts. *State v. Richard*, 4 Wn. App. 415, 426, 482 P.2d 343 (1971), points out that a fact "must be established below rather than asserted

for the first time on appeal by counsel for the party claiming to be adversely affected."[2]

■■ Thirdly, under the circumstances, we must determine from the record before us the overall meaning of the findings on the issue of the defense raised. Two rules are available for this purpose: First,

> the general rule that, when the language of findings is equivocal and susceptible of a construction which will support the judgment, though also susceptible of another construction, the findings will be given that meaning which sustains the judgment, rather than one which would defeat it.

(Citations omitted.) *Shockley v. Travelers Ins. Co.*, 17 Wn.2d 736, 743, 137 P.2d 117 (1943). Secondly, the rule that if the conclusions of law include any statement of fact, the statement may be treated as such even though found in what is characterized as a conclusion of law. *Estes v. Bevan*, 64 Wn.2d 869, 395 P.2d 44 (1964); *Ferree v. Doric Co.*, 62 Wn.2d 561, 383 P.2d 900 (1963); *Baltzelle v. Doces Sixth Ave., Inc.*, 5 Wn. App. 771, 490 P.2d 1331 (1971); 2 Orland, Wash. Prac. § 308, at 334 n.28 (3d ed. 1972). Conclusion of law No. 2 above quoted, stating "The City has not breached the agreement . . . ," is both a conclusion of

---

[2]During oral argument, counsel made explanatory reference to an overlay map, plaintiff's exhibit No. 11. It purports to show Plan B with certain street locations different from the original plan affecting defendant's property. If we could assume testimony absent from the record before us has no bearing on the meaning or significance of the exhibit and that, therefore, we may properly rely solely on the exhibit for a description of the changes, one change would require that the city obtain an additional right-of-way over defendant's land. As the trial court's opinion points out, the acquisition of the right-of-way would require that defendant be paid. Defendant's just compensation would be determined on the basis of the impairment of his rights as a landowner, augmented by the benefits, if any, of a valid street system agreement. Defendant does not contend that, notwithstanding his receipt of just compensation, he would have a further defense to the city's suit for specific performance based on supervening impossibility of performing the original street system agreement. In addition to the defense of illegality, he relies rather on the defense of anticipatory repudiation we later hold is unavailable under the record brought here for review.

law and a statement of fact. Insofar as it is a statement of fact, we may so consider it. *Ferree v. Doric Co., supra.*

■ By applying the rules stated, we are able to determine why the "several material changes" referred to in finding of fact No. 6, and "the material alterations" described in finding of fact No. 7, are not material in the sense required for purposes of rendering applicable the doctrine of anticipatory repudiation. The latter finding states the local improvement district improvements called for were

> a partial implemantation [*sic*] of Plan B,. and materially altered the plan by calling for the improvement of some different streets than those contained in the original street plan . . .

The material alterations are then described as follows:

> Two north-south streets, shown on the original street plan, which would bisect and pass through defendant Kezner's property at two locations, were not developed by the City at this time under the LID. However, included within the streets scheduled for improvement by the LID was N.E. 87th Street, which followed the same alignment and course as contained in the original Street System Agreement, Plan A and Plan B, and required only the north 30 feet of defendant George Kezner's property for this street right-of-way.

The reference in the quoted finding to the improvement of "some different streets than those contained in the original street plan . . ." apparently means the improvements outside the area rezoned by ordinance No. 349. The reference in the finding to the two north-south streets shown on the original street plan which would bisect and pass through defendant's property at two locations but which were not to be developed "at this time," means the streets were not abandoned, but merely not presently improved. Northeast 87th Street, which was to be partially improved at this time, followed the same alignment and course as contained in the original street system agreement. The north 30 feet of defendant's property for this street right-of-way was all that was then required. The delay in im-

proving the streets described does not constitute an abandonment of the original street system plan.

The analysis made on the basis of the record brought up for review permits the following construction of the findings. The April 2, 1968, Redmond City Council resolution adopted Plan B. Plan B called for changes which are described or included in finding of fact No. 7. Whether there are other changes also, and if so their nature and permanence, is not expressly found and is, therefore, to be considered unproved. The changes described in finding of fact No. 7 consist of first-stage improvements consistent with the original plan. As the court said, "there is no deviation from the original plan in the development out there so far as it has gone." In conclusion of law No. 2 the court repeated, "The City has not breached the agreement and it is not necessary that the City be required to improve all of the streets contemplated at one time . . ." The trial court had no question of the continued vitality of the original plan unaffected by the lapse of time since the original plan was agreed upon. Nothing has been done to prevent either the city or defendant from fully implementing the plan when the development of the area is such as to make financially and practicably feasible the installation of the improvements, whether by the city or by means of a local improvement district. Meanwhile, the agreement is in effect. As the court cautioned:

> I think the city might be wise in going slow in deviating from this original street system agreement, but certainly if they do they are going to have to pay for it.

The agreement being in effect, defendant was under a duty to deed and dedicate to the city the land needed "when requested to do so." The city has made the necessary request.

Affirmed.

SWANSON, C.J., and JAMES, J., concur.