IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

GEORGE E. FAILING COMPANY, dba )
GEFCO, a division of Blue Tee Corp., )
a Delaware corporation, )
                      )
         Respondent, )
                      )
        v. )
                      )
CASCADE DRILLING, INC., a )
Washington corporation, and BRUCE )
NIERMEYER, )
                      )
         Appellants, )
                      )
                      )
HUB CITY, INC., a Delaware )
corporation, )
                      )
         Third-Party )
         Defendant. )
_____ )

No. 73017-7-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 27, 2016

BECKER, J. — Exercising its inherent power, the trial court imposed sanctions of more than $1.6 million for the appellant's bad faith in using fabricated evidence to carry on three years of litigation. Substantial evidence supports the finding of bad faith, and we conclude the court did not abuse its inherent power.

FACTS

The order of sanctions at issue in this appeal was entered against appellant Cascade Drilling Inc. in favor of respondent George E. Failing Company. The respondent company, also known as Gefco, manufactures and sells large drilling machinery.

The source of their dispute is a project that began in 2008. Cascade was hired to drill a water well at a housing development in Wheeler Canyon, California. Cascade used a 50k drilling rig purchased from Gefco. Between March and June 2008, the pump drive shafts on the drilling rig failed four times. After each failure, Cascade ordered a replacement pump drive shaft from Gefco.

In September 2008, Cascade ordered drilling equipment for an unrelated drilling rig from Gefco but did not pay. In July 2009, Gefco sued to collect. Cascade admitted not paying and asserted counterclaims alleging that Gefco was indebted to Cascade for nonconforming and defective goods, including the replacement pump drive shafts purchased for the Wheeler Canyon project.

For the next three years, the parties litigated extensively. Cascade produced three pump drive shafts, representing them to be the second, third, and fourth pump drive shafts that failed on the Wheeler Canyon job.

In August 2012, Cascade voluntarily dismissed its counterclaims with prejudice and paid Gefco the amount due on the disputed invoice. This resolved the merits of the original claim and counterclaim.

Gefco moved for sanctions against Cascade. Based on information that came to light late in the litigation, Gefco alleged that the three pump drive shafts

produced by Cascade did not come from the rig used on the Wheeler Canyon job and that Cascade had fabricated evidence to the contrary. In October 2012, the court held a hearing on the motion.

Over a year later, on November 27, 2013, the trial court issued a letter ruling, accompanied by findings of fact and conclusions of law, that Cascade engaged in bad faith litigation and fabricated the pump drive shaft evidence. The court ordered Cascade and Bruce Niermeyer, Cascade's president, to pay Gefco's "reasonable" attorney fees and costs.

For the next year, the parties litigated the amount of "reasonable" attorney fees and costs. On December 29, 2014, the trial court issued findings of fact and conclusions of law, ordering Cascade and Niermeyer to pay Gefco attorney fees and costs of $1,394,435 and expert fees of $247,286 in partial reimbursement of the fees and costs incurred in the litigation. On January 26, 2015, Cascade filed a notice of appeal from the order of December 29, 2014.

TIMELINESS OF APPEAL

Cascade assigns error to the order of November 27, 2013, in which the court set forth its decision that sanctions would be ordered, as well as to the order of December 29, 2014, which quantified the amount of the sanctions ordered. Gefco, relying on RAP 2.4(b), contends that because the notice of appeal referred only to the second order, it is timely only as to that order, such that the only issues properly before this court are those related to the amount of the sanction and the interest rate. Gefco is mistaken. The appeal of the second order brings the first order up for review.

3

We have held that under RAP 2.4(b), an appeal from an award of attorney fees does not bring up for review the merits of the underlying summary judgment decision. Bushong v. Wilsbach, 151 Wn. App. 373, 376, 213 P.3d 42 (2009). A litigant must appeal from the judgment "establishing the legal basis for an attorney fee award" within 30 days of the entry of that judgment. Bushong, 151 Wn. App. at 377. Unlike in Bushong, here the legal basis for the attorney fee award was not established by a judgment on the merits of the underlying case. Gefco was already awarded contractual attorney fees for its debt collection action when the merits of that claim were resolved in 2012. George E. Failing Co. v. Cascade Drilling, Inc., No. 69627-1-I (Wash. Ct. App. Feb. 18, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/696271.pdf (affirming award).

The present appeal concerns an order of attorney fees awarded on a motion for sanctions that was litigated and decided after and separately from the merits of the underlying claims. The order of November 27, 2013, did not inhere in the outcome of the underlying case and was not itself a final judgment. Rather, it was analogous to a preliminary decision on liability. In that sense, it did not become "final" and appealable under RAP 2.2(a)(13) until the court determined the amount for which the defendant was liable. See Miller v. City of Port Angeles, 38 Wn. App. 904, 907 n.2, 691 P.2d 229 (1984) ("A judgment of liability is not ordinarily appealable until damages have been awarded"), review denied, 103 Wn.2d 1024 (1985); Zimmerman v. W8LESS Prods., LLC, 160 Wn. App. 678, 691, 248 P.3d 601 (2011) (summary judgment order on liability not

appealable until after determination of damages). Cascade's timely appeal of the December 2014 order setting the amount of sanctions serves as a timely appeal of the November 2013 order holding that sanctions would be awarded.

## EVIDENCE OF BAD FAITH

The United States Supreme Court has recognized that "certain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." United States v. Hudson, 11 U.S. (7 Cranch) 32, 34, 3 L. Ed. 259 (1812).

In general, a court may resort to its inherent powers only to protect the judicial branch in the performance of its constitutional duties when reasonably necessary for the efficient administration of justice. State v. Wadsworth, 139 Wn.2d 724, 740-41, 991 P.2d 80 (2000); In re Salary of Juvenile Director, 87 Wn.2d 232, 245, 552 P.2d 163 (1976). Inherent powers must be exercised with restraint and discretion because they are "shielded from direct democratic controls," and therefore, the inherent power to assess attorney fees exists only in "narrowly defined circumstances." Roadway Exp., Inc. v. Piper, 447 U.S. 752, 764-65, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980). For example, if a court finds "'that fraud has been practiced upon it, or that the very temple of justice has been defiled,'" it may assess attorney fees against the responsible party. Chambers v. NASCO, Inc., 501 U.S. 32, 46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991), quoting Universal Oil Prods. Co. v. Root Refining Co., 328 U.S. 575, 580, 66 S. Ct. 1176, 90 L. Ed. 1447 (1946). A court may assess attorney fees where a party has

"'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"

Chambers, 501 U.S. at 45-46, quoting Alyeska Pipeline Serv. Co. v. Wilderness

Soc'y, 421 U.S. 240, 258-59, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975).

Washington courts follow the federal cases in holding that a trial court's

inherent authority to sanction litigation conduct by assessing attorney fees and

costs is properly invoked upon a finding of bad faith. State v. S.H., 102 Wn. App.

468, 475, 8 P.3d 1058 (2000); see also In re Recall of Pearsall-Stipek, 136

Wn.2d 255, 265, 961 P.2d 343 (1998). Generally, a decision to impose

sanctions is reviewed for abuse of discretion. Wash. State Physicians Ins. Exch.

& Ass'n v. Fisons Corp., 122 Wn.2d 299, 338, 858 P.2d 1054 (1993). A trial

court abuses its discretion when its decision is manifestly unreasonable or based

on untenable grounds. Fisons, 122 Wn.2d at 339.

Here, the trial court made an explicit finding that Cascade engaged in bad

faith litigation. Finding of Fact 55. While the cases cited above establish that a

sanction imposed for bad faith litigation will be reversed absent a finding of bad

faith, they provide little guidance on how to review a sanction when the trial court

does make a finding of bad faith. Fortunately, in this complex and technical

case, the trial court not only made the required finding of bad faith, but also made

its reasoning clear in additional findings of fact setting forth the evidence of bad

faith.[1]

---

[1] The additional findings provide a safeguard against the concern that requiring no more than "the talismanic recitation of the phrase 'bad faith'" forecloses meaningful review of sanctions based on inherent authority. Chambers, 501 U.S. at 69 (Kennedy, J., dissenting).

Cascade contends the additional findings are contradictory and show that the court was confused about fundamental facts and relied on abandoned or equivocal expert testimony. To evaluate Cascade's position, we employ the usual standard of review for factual matters. We defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence and credibility of the witnesses. State v. Merrill, 183 Wn. App. 749, 755, 335 P.3d 444 (2014). There is a presumption in favor of the trial court's findings, and the party claiming error has the burden of showing that a finding of fact is not supported by substantial evidence. Merrill, 183 Wn. App. at 755.

First, the trial court found that Cascade failed to disclose repairs that were made to the drilling rig used at Wheeler Canyon before the Wheeler Canyon job. Finding of Fact 49. The trial court did not credit Niermeyer's explanation for this omission.

Second, the court found that Cascade failed to admit candidly that there was no way to be sure which of the three shafts Cascade produced came from which failure. Finding of Fact 50. This finding is related to the court's observation that Niermeyer and Chuck Rider, Cascade's chief mechanic, presented contradictory accounts of how the shafts come to be labeled and that, in the end, Rider changed his account to align with Niermeyer's. The court did not find Niermeyer to be a credible witness. Finding of Fact 19-22, 51. The court noticed that Rider became visibly uncomfortable on the witness stand when questioned about how and when he was asked to collect maintenance records for the 50k rig. Finding of Fact 26. These findings are supported by substantial

7

evidence in the record and by the trial court's determinations of witness credibility, to which we defer. The court found that "had Cascade acknowledged that it could not associate specific shafts with related failures, its counterclaims either would never have been filed, would have been dismissed or, at best, would have led to a jury instruction on spoliation." Finding of Fact 52.

Third, the trial court relied on testimony of expert witness Dr. David Howitt to find that the failed shafts presented by Cascade as evidence actually came from rigs other than the 50k rig used at Wheeler Canyon. "Clearly, counsel for Cascade never would have filed the counterclaims had they been aware that the evidence was gathered from other rigs." Finding of Fact 53. This finding, and the inference the court drew from it, is supported by Dr. Howitt's testimony, discussed further below.

Fourth, the trial court found that Cascade, as a matter of litigation strategy, tried to deflect attention from the particular failures at Wheeler Canyon by expanding its lawsuit to include all 50k rigs manufactured by Gefco. "Had the Court permitted Cascade to have done so, Gefco would have faced a great deal of pressure to settle in order to protect its business. Cascade could have prevailed without ever having to establish the cause of the failures at Wheeler Canyon." Finding of Fact 54. While there was no direct evidence of Cascade's litigation strategy, this finding was a reasonable inference from the trial court's long experience with the litigation.

These findings alone constitute substantial evidence supporting the trial court's finding that Cascade engaged in bad faith litigation. To these findings, the trial court added another critical finding that Cascade vigorously contests: that Cascade and Niermeyer "fabricated the evidence upon which Cascade's counterclaims were based." Conclusion of Law 1. Although this is denominated as a conclusion of law, we will review it as a finding. See, e.g., City of Redmond v. Kezner, 10 Wn. App. 332, 343, 517 P.2d 625 (1973) (a statement of fact included within the conclusions of law will be treated as a finding of fact); Ferree v. Doric Co., 62 Wn.2d 561, 567, 383 P.2d 900 (1963) ("Since this conclusion of law partakes of the nature of a finding of fact, it may be treated as such.")

Cascade contends that fabrication of evidence must be proven by clear, unequivocal, and convincing evidence because it is tantamount to a fraud on the court. As authority for this argument, Cascade cites In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 538 F.2d 180 (8th Cir. 1976), cert. denied, 429 U.S. 1040 (1977).

> Fraud on the court, though not easily defined, can be characterized as a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense. . . . A finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel, . . . and must be supported by clear, unequivocal and convincing evidence.

Antibiotic Antitrust Actions, 538 F.2d at 195 (citations omitted). In that case, the lower court refused to enforce a patent as a sanction for conduct that impeded discovery. The appellate court reversed, concluding that the misconduct, a failure to disclose certain files in discovery, was not egregious misconduct

characterizable as fraud on the court. <u>Antibiotic Antitrust Actions</u>, 538 F.2d at 195. The court accepted the argument that the misconduct was an error.

In the trial court, Cascade did not argue for application of the clear, cogent, and convincing standard for proof of fabrication of evidence until after the court found fabrication. The question before the trial court was whether to find Cascade had acted in bad faith. The sufficiency of that ultimate finding is the question before this court. No Washington case has suggested that the standard of review for a finding of bad faith is more exacting than substantial evidence.

Assuming without deciding that the clear, cogent, and convincing standard is applicable to the allegation that Cascade fabricated evidence, we conclude the trial court would have made the same finding under that standard and that the finding is affirmable under that standard.

Cascade produced three pump drive shafts, which Cascade represented were the second, third, and fourth pump drive shafts to fail at Wheeler Canyon. Cascade represented that two of the shafts failed at the mud pump location and one at the pull-down pump location. But Gefco's expert, Dr. Howitt, opined that all three pump drive shafts produced by Cascade came from a pull-down pump location.

What the trial court found most persuasive was Dr. Howitt's demonstration in court how the three pump drive shafts produced by Cascade fit into the pull-down pump input shaft, and not the mud pump input shaft. During his testimony, Dr. Howitt put the three shafts produced by Cascade into the pull-down pump input shaft and showed how all three pump drive shafts fit. The trial judge

remarked that they fit right in together. Dr. Howitt then demonstrated how none of the shafts produced by Cascade fit into the mud pump input shaft, and the trial judge observed and agreed that it did not fit.[2]

Dr. Howitt testified that he would expect to see "blueing" oxidation on the pump drive shafts if Rider installed them with zero clearance as he said. None of the pump drive shafts produced by Cascade had blueing. Dr. Howitt testified that the chamfer impression or wear evidence on the shafts that Cascade presented as evidence was consistent with the pull-down pump location, not mud pump. He believed the shafts he was given to examine "most likely came from another rig entirely." Finding of Fact 35. He testified, "That was the only Foote Jones spline that was ever provided to Cascade Drilling so that Foote Jones spline had to have come from a different company because Cascade Drilling only ever bought one 50K rig, and therefore they would never have a second Foote Jones pump. So that leads me to believe that this evidence was in fact falsified." Report of Proceedings (Oct. 29, 2015) at 159. He also testified, "You could deduce that straightforwardly that since they lost the original equipment pull-down pump spline at that first repair, they would have no access to another Foote Jones pump, so they must have got it from another PTO box, which means

---

[2] Gefco has repeatedly requested that this court recreate Dr. Howitt's demonstration using the trial exhibits. The requests are unfounded, unnecessary, and distracting. Attempting to recreate a physical demonstration that occurred in the trial court would violate the principle that appellate courts do not hear or weigh evidence or find facts. We do not make findings or recreate trial court demonstrations. See, e.g., Quinn v. Cherry Lane Auto Plaza, Inc., 153 Wn. App. 710, 717, 225 P.3d 266 (2009), review denied, 168 Wn.2d 1041 (2010). All motions and requests by Gefco on this issue are denied.

they got it from some other drilling company. Looks very straightforward to me. This evidence was falsified. . . .This evidence was falsified, clearly falsified." Report of Proceedings (Oct. 30, 2015) at 207.

The trial court found Dr. Howitt "candid" and with "impeccable" academic credentials, findings of fact 29-30, in contrast to other expert witnesses whose testimony the court found less reliable. Dr. Howitt's opinion that the pump drive shafts Cascade submitted into evidence actually came from other rigs provides clear, cogent, and convincing support for the trial court's conclusion that Cascade fabricated evidence.

To undermine the finding of fabrication, Cascade attempts to show that the court's reasoning was confused or illogical. These attacks are not persuasive. To begin, Cascade contends that the trial court inaccurately stated in findings 16 and 17 that a "shaft" on the PTO box had failed before Wheeler Canyon. The record shows that both parties and the court were clear that a pump had been replaced, not a shaft. An occasional lack of precision as to terminology does not demonstrate that the court had a material misunderstanding of the evidence.

Next, Cascade contends that the finding of fabrication was inconsistent with the court's recognition that Niemeyer had no motive to go to the trouble of obtaining shafts from somewhere else. The relevant finding states, "Given Mr. Niermeyer's contention that the shafts failed because they were too soft, where the shafts came from was immaterial to him." Finding of Fact 53. This finding is not inconsistent with the court's perception that other shafts were switched with

the shafts from Wheeler Canyon. An unchallenged finding recounts testimony that the marking of shafts was altered "'to make the story come out right.'" Finding of Fact 43. Niermeyer's motive is the subject of a finding that Niermeyer "appears to have embarked on some sort of vendetta against Gefco and his antipathy toward Gefco gave him a motive to falsify evidence." Finding of Fact 51. This finding is supported by the court's observations of Niermeyer in court and other evidence. See Finding of Fact 19.

Cascade contends the court's reliance on the absence of "blueing" in the shafts is unsupported by the evidence. There was conflicting testimony on this topic. As discussed above, the court accepted Dr. Howitt's opinion that the failed drive shafts would have exhibited blueing if they had been from the 50k rig. Cascade's witnesses disagreed with Dr. Howitt but did not decisively controvert his testimony.

Cascade further contends that the "miniscule differences" in chamfer impressions on the pump drive shafts are not clear and convincing evidence of fraud. As with the blueing issue, there was conflicting testimony on this topic and the court accepted Dr. Howitt's opinion. And the court did not rely solely on this evidence to find that Cascade fabricated evidence, but rather on all the evidence detailed above taken together. Cascade points out that Dr. Howitt had changed his opinion on this issue, but as discussed above, the trial court found him credible, partly because he readily admitted this error. See Finding of Fact 30. Cascade alleges that the court demonstrated a "fundamental misunderstanding" of the chamfer impression evidence in finding of fact 13. But the court's

13

discussion of the impression evidence in findings of fact 33 and 34 sufficiently demonstrates the court's understanding.

Cascade also claims the evidence is insufficient to support that part of the court's letter ruling where the court states that Cascade dismissed its claims when it realized it had been "found out." The written finding states that Cascade "abruptly" settled, which is not inaccurate. In any event, the court did not rely on the so-called abrupt settlement as evidence that Cascade fabricated evidence.

Taken as a whole, the findings show the court was appalled to learn that Cascade filed a lawsuit alleging the shafts from the 50k rig were defective and carried on litigation for three years without disclosing there was no way to know which shafts were which. According to the letter ruling, the court was "unmoved" by Cascade's defense that its mechanic merely made errors. The court thought it "very likely" that the shafts in evidence had been gathered from other rigs.

We conclude that clear, cogent, and convincing evidence supports the court's determination that Cascade fabricated evidence and that the fabrication supported the finding of bad faith.

## UNCLEAN HANDS

Cascade argues that the trial court's award of attorney fees to Gefco is barred by the doctrine of unclean hands because the trial court sanctioned Gefco $10,000 for Gefco's own bad faith discovery violations.

Unclean hands is an equitable defense. See, e.g., J.L. Cooper & Co. v. Anchor Sec. Co., 9 Wn.2d 45, 113 P.2d 845 (1941). In Chambers, the Supreme Court stated that imposition of sanctions in instances such as bad faith litigation

14

"transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself," serving the "dual purpose" of vindicating judicial authority and making the prevailing party whole. Chambers, 501 U.S. at 46.

Cascade objects to what it perceives as unfairness—Cascade received a much larger sanction than Gefco despite what Cascade views as less culpable behavior. But this objection is a matter of proportionality, not equity or unclean hands. The trial court imposed sanctions that were proportional to each party's bad behavior as the court saw it. We reject the argument that the award of attorney fees to Gefco is barred by the doctrine of unclean hands.

## INTEREST RATE

Cascade contends that the trial court applied the wrong interest rate to the judgment. The interest rate applicable to a money judgment is governed by RCW 4.56.110. The trial court set the judgment interest rate at 12 percent under subsection (4), the catch-all subsection setting the interest rate for all judgments not covered by subsections 1-3. Cascade argues that the interest rate should instead be 5.25 percent under subsection (3)(b), which sets the interest rate for "judgments founded on the tortious conduct of individuals or other entities, whether acting in their personal or representative capacities."

Cascade points out that insurers have a duty to act in good faith, and their failure to do so sounds in tort, triggering the interest rate for tort cases. Miller v. Kenny, 180 Wn. App. 772, 798, 325 P.3d 278 (2014). But Cascade presents no authority or persuasive argument for analogizing bad faith litigation to the tort of

insurance bad faith. We find no error in the court's decision to apply the judgment interest rate under RCW 4.56.110(4).

## PERSONAL LIABILITY

The trial court held Niermeyer, Cascade's president, personally liable for the award of attorney fees, although he was not a party at trial. Niermeyer joined Cascade's appeal as an aggrieved nonparty and argues that the trial court erred in holding him personally liable without finding a piercing of the corporate veil.

If a corporate officer participates in wrongful conduct or with knowledge approves of the conduct, then the officer, as well as the corporation, is liable for the penalties. Grayson v. Nordic Constr. Co., 92 Wn.2d 548, 554, 599 P.2d 1271 (1979).

The court found the following regarding Niermeyer:

19. Mr. Niermeyer played a central role in this case. By his own admission, Mr. Niermeyer became extremely angry with Gefco because he believed they knew there was a problem with their 50k rigs and they refused to acknowledge or fix it . . . .
20. During the sanctions hearing, he was very involved with his attorney's cross-examination of Gefco's metallurgical expert, passing notes and engaging in frequent conferences. On the stand, he appeared to seethe with anger at Gefco and had great difficulty controlling narrative testimony.

Finding of Fact 19-20. The court concluded that the fabrication of the evidence upon which Cascade's counterclaims were based was attributable to Niermeyer as to well as to Cascade. Conclusion of Law 1.

These findings support the conclusion that Niermeyer is personally liable for the sanctions under the test set forth in Grayson.

## AMOUNT OF ATTORNEY FEES

The trial court concluded that it was appropriate to sanction Cascade by awarding attorney fees and costs to Gefco, but not in the total amount requested by Gefco. The court asked Gefco to remove from its application for attorney fees the work related to Gefco's own bad faith discovery violations. Cascade objected that Gefco did not fully comply with this request. In response, the trial court entered a finding of fact that "Cascade contends that it is impossible to determine how much time was related to discovery issues that included thwarting some of Cascade's discovery demands. Gefco asserts that it has removed those items, pursuant to the Court's request. Given that much of the litigation in this case was about discovery, the Court finds that it is reasonable to include the items related to discovery on the basis of [Gefco's counsel's] statement that Gefco complied with the Court's request."

The trial court concluded it was appropriate to place on Gefco the burden of establishing the reasonableness of its request for fees and costs. Cascade contends the trial court shifted the burden to Cascade to disprove the reasonableness of Gefco's fees, quoting comments expressing the court's unwillingness to search through the spreadsheets for possible instances of inappropriate billing by Gefco.

The standard of review of an award of attorney fees is abuse of discretion. Pearsall-Stipek, 136 Wn.2d at 265. We find no abuse of discretion.

17

Affirmed.  Each party will bear its own attorney fees and costs for this appeal.

_Becker, J._

WE CONCUR: