# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ASHLEY JENSEN,<br><br>        Appellant,<br><br>        v.<br><br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES,<br><br>        Respondent. | No. 88155-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

FELDMAN, J. — Ashley Jensen appeals the review decision and final order of the Department of Social and Health Services (DSHS) Board of Appeals (Board), which affirmed a substantiated finding by Adult Protective Services (APS) that she had neglected a vulnerable adult. Because Jensen has not established an entitlement to relief, we affirm the Board's final order and deny her request for prevailing party attorney fees.

I

This case centers around Jensen's care of two vulnerable adults, Travis and Bo.[1] At the time of the incident at issue, both Travis and Bo resided at the same supported living home where they received care in accordance with their person

---

[1] Because Travis and Bo are vulnerable adults, we refer to Travis by his first name and refer to Bo by his preferred nickname to protect their privacy.

centered service plans. These service plans indicated the level of support and supervision each resident required. Travis required "high support with protective supervision." His service plan noted he "[c]annot be left unattended. Requires a support person on the property at all times, at least during awake hours." Bo had a long history of engaging in sexual aggression and physical assaults. Consequently, his service plan indicated he required "Line of sight/earshot (close monitoring): Cannot be left unattended. Requires a support person within the room or within earshot of the client's location at all times during awake hours." Bo's service plan further stated that line of sight/earshot supervision was necessary "so he doesn't escalate or become unsafe."

On April 9, 2021, APS Investigator Steven Hauge arrived at the supported living home to investigate an April 1, 2021 incident where Bo allegedly sexually assaulted Travis. When Hauge arrived, he saw Jensen walking out from behind some trees approximately 20 to 25 feet away from the home. Because Jensen was the only caregiver on site, Travis and Bo were inside the home alone at this time. When Hauge entered the home, Bo was upstairs in his bedroom and Travis was downstairs in the kitchen.

Upon arrival, Hauge asked Jensen a series of questions regarding her knowledge of Travis's and Bo's service plans. In response, Jensen acknowledged she had not reviewed their service plans recently and knew that an incident had occurred between Travis and Bo a week prior but was unsure of the details. Hauge also confirmed that Jensen had executed Bo's sign-off sheet indicating she had reviewed Bo's service plan a month earlier.

On October 24, 2022, Hauge interviewed Jensen by telephone regarding the April 9, 2021 incident. During this interview, Jensen stated she remembered stepping outside to take an important phone call from a friend. She admitted it was a requirement for her to read her clients' service plans and sign a sheet acknowledging she reviewed them. And she remembered that Bo required line of sight/earshot supervision and stated she had known about that requirement for some time. Based on its investigation, APS sent Jensen notice that it had made a substantiated finding that she had neglected Travis, a vulnerable adult, by failing to adequately supervise Bo.

Jensen requested review of the substantiated finding, and an administrative hearing was held on March 18-19, 2024. Following the hearing, the Administrative Law Judge (ALJ) entered an initial order affirming APS's substantiated finding of neglect. Jensen appealed the initial order to the Board, which affirmed the ALJ's initial order in a review decision and final order. This timely appeal followed.

II

The Washington Administrative Procedure Act (APA), ch. 34.05 RCW, governs judicial review of an agency's action. Under the APA, we review only the final agency decision, here the Board's final order. *Woldemicael v. Dep't of Soc. & Health Servs.*, 19 Wn. App. 2d 178, 184, 494 P.3d 1100 (2021) (published in part). As the party challenging the agency action, Jensen bears the burden of demonstrating the invalidity of the agency's decision. *Id.* (citing RCW 34.05.570(1)(a)). Additionally, "'[t]he challenging party must show that [they have] been substantially prejudiced by the agency action.'" *Id.* (quoting *Beatty v. Fish &*

*Wildlife Comm'n*, 185 Wn. App. 426, 443, 341 P.3d 291 (2015); citing RCW 34.05.570(1)(d)).

Under the APA, "we may grant relief . . . for any one of nine reasons set forth in RCW 34.05.570(3)(a)-(i)." *Am. Fed'n of Teachers, Local 1950 v. Pub. Emp't Relations Comm'n*, 18 Wn. App. 2d 914, 921, 493 P.3d 1212 (2021). Jensen argues we should grant relief under three subsections of RCW 34.05.570(3): subsection (e), which authorizes relief if "[t]he order is not supported by evidence that is substantial"; subsection (f), which authorizes relief if "[t]he agency has not decided all issues requiring resolution by the agency"; and subsection (i), which authorizes relief if "[t]he order is arbitrary or capricious." We address each in turn.

A

Citing RCW 34.05.570(3)(e), quoted above, Jensen challenges finding of fact 10 and conclusions of law 20, 27, and 28. While the latter are designated as conclusions of law, Jensen cites *City of Redmond v. Kezner,* 10 Wn. App. 332, 343, 517 P.2d 625 (1973), which states: "if the conclusions of law include any statement of fact, the statement may be treated as such even though found in what is characterized as a conclusion of law." Jensen argues these findings and conclusions (or portions thereof) are not supported by evidence that is substantial as required by RCW 34.05.570(3)(e).

We review findings of fact for substantial evidence in light of the whole record. RCW 34.05.570(3)(e). Substantial evidence exists when there is "a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order." *Spokane County. v. E. Wash. Growth Mgmt. Hr'gs Bd.*,

176 Wn. App. 555, 565, 309 P.3d 673 (2013). We view the evidence in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority, here DSHS. *Id.* This court does not reweigh conclusions "about witness credibility or the weight of evidence, even if [it] might have reached a different conclusion." *Woldemicael*, 19 Wn. App. 2d at 184.

1

Finding of fact 10 states that Jensen "signed and acknowledged on February 9, 2021, and March 4, 2021, that she read Bo's service plan and understood the type of support she was to provide. These dates were within two months prior to [Jensen] leaving Travis and Bo inside the home while she went outside." Jensen does not argue that she never signed Bo's service plan or that she did not understand the type of support she was to provide, but rather that substantial evidence does not support the Board's finding that she signed and acknowledged Bo's plan on March 4, 2021. We agree but hold that Jensen is not entitled to relief on this basis.

At the administrative hearing, Hauge testified that Jensen signed Bo's service plan on March 9, 2021. Review of Bo's service plan sign off sheet also confirms that Jensen signed it on March 9, 2021. Thus, substantial evidence does not support the Board's finding that Jensen signed Bo's service plan on March 4, 2021. But this error does not affect the Board's findings, and corresponding analysis, that Jensen (a) "read Bo's service plan and understood the type of support she was to provide" and (b) did so "within two months prior to . . . leaving Travis and Bo inside the home while she went outside." The error is likewise

immaterial to the Board's final conclusion that Jensen neglected a vulnerable adult. Thus, Jensen has not established that she was prejudiced by the Board's erroneous finding. *See* RCW 34.05.570(1)(d); *Woldemicael,* 19 Wn. App. 2d at 184.[2]

2

Conclusion of law 20 refers to Jensen's "decision to go outside and leave Travis and Bo inside and unsupervised on April 9, 2021." Jensen argues substantial evidence does not support the Board's finding that Bo was "unsupervised" at the time because there is a lack of evidence showing she was out of earshot supervision of Bo while outside. We disagree.

At the administrative hearing, Hauge testified that when he arrived at the supported living home on April 9, 2021, Jensen was 20 to 25 feet away from the house and Bo and Travis were inside the house alone. He further stated that Travis was downstairs in the kitchen while Bo was upstairs in his bedroom. Jensen testified at the hearing that she took the phone call outside for "privacy" so that Travis would not "overhear a conversation and think that it was relevant to his life." Jensen also answered opposing counsel's question affirmatively when asked if she took the phone call outside so that neither Bo nor Travis would overhear the conversation. Although Jensen asserted at the hearing that she was within earshot of Bo because the windows to his bedroom were open and she could hear him singing from outside the house, evidence does not need to be undisputed to be substantial. *Woldemicael*, 19 Wn. App. 2d at 184.

---

[2] *See also State v. Caldera*, 66 Wn. App. 548, 551, 832 P.2d 139 (1992) ("The trial court's erroneous finding does not materially affect the conclusions of law and therefore is harmless error.").

In short, a reasonable fact finder could find based on the totality of the evidence that Jensen was out of earshot supervision of Bo and thus left Bo and Travis unsupervised in the house. Substantial evidence supports this determination.

3

Conclusion of law 27 states in relevant part, "While [Jensen] maintains that she could hear Bo and she could react if she believed Bo was leaving his room, she was distracted outside the home talking to an upset friend and maintaining her privacy." Jensen argues substantial evidence does not establish that she was "distracted" while talking on the phone outside or that she went outside to "maintain[] her privacy." We disagree.

Jensen reported that while working, she "got an emergency phone call, and went outside to smoke a cigarette while on the phone." While Jensen argues that the Board improperly speculated that she was "distracted," her argument is unpersuasive. The Board's use of the word "distracted" stands to support the assertion that, while on the phone, Jensen was not presently attending to her role as a caregiver but rather that her attention was drawn to personal matters. A reasonable fact finder could find that Jensen was distracted from her caregiving responsibilities while outside of the home, away from the residents reliant on her supervision, and on an emergency phone call with her friend. Substantial evidence supports this finding.

Jensen also testified that she took the phone call outside for "privacy" so that Travis "wouldn't overhear [the] conversation and think that it was relevant to

his life." She also responded affirmatively when asked if she took the phone call outside so that Travis and Bo would not overhear her conversation. Substantial evidence supports the challenged finding as a reasonable fact finder could find that Jensen took the phone call outside to maintain her personal privacy. But even if Jensen's contention is correct as to this specific finding, it is immaterial to the Board's final conclusion that Jensen neglected a vulnerable adult—as discussed below.

4

Conclusion of law 28 states:

> To conclude, [DSHS] has proven that [Jensen] owed Travis, a vulnerable adult, a duty of care and she breached that duty when she left Travis alone in the house with Bo. This was a failure to provide services sufficient to avoid or prevent physical harm or pain to Travis and showed a serious disregard for the consequences that created a clear and present danger to Travis' health, welfare, and safety. [DSHS] has proven by a preponderance of the evidence that [Jensen] neglected Travis.

Jensen claims this final conclusion—in particular, that she "neglected Travis"—is unsupported by substantial evidence. Again, we disagree.

Former RCW 74.34.020(16), now RCW 74.34.020(15),[3] defines neglect as follows:

> (16) "Neglect" means . . . (b) an act or omission by a person or entity with a duty of care that demonstrates a serious disregard of consequences of such a magnitude as to constitute a clear and present danger to the vulnerable adult's health, welfare, or safety . . ."

---

[3] The statutory definition of neglect when this case arose was set forth in subparagraph 16; the definition is now in subparagraph 15, but is otherwise unchanged.

While "serious disregard" and "clear and present danger" are not further defined by the statute, *Woldemicael* makes clear that more than simple negligence is required to show a serious disregard of consequences that created a clear and present danger. 19 Wn. App. 2d at 182.

Substantial evidence supports the Board's finding of neglect. Jensen was the only caregiver on site on April 9, 2021. Jensen acknowledged that prior to her act of stepping outside to take a personal phone call, she was aware of Bo's required line of sight/earshot supervision needs due to his long history of sexual and assaultive behavior. This was further evidenced by Jensen's signature on Bo's sign off sheet which stated that, by signing, she agreed she had read the service plan and understood the supervision she was required to provide. Jensen signed this document one month prior to the incident at issue. And she told investigator Hauge that she was aware of the alleged assault that occurred between Bo and Travis a week prior.

Bo's service plan required "[l]ine of sight/earshot (close supervision)." Jensen concedes she was not within line-of-sight supervision of Bo when she left the supported living home to take a phone call on April 9, 2021. And substantial evidence supports the finding that she was not within earshot supervision. When Hauge arrived, Jensen was approximately 20 to 25 feet outside of the home where Travis and Bo remained alone. She had been outside for approximately ten minutes, talking on the phone with a friend. And she testified at the administrative hearing that she took the phone call outside for "privacy," far enough away so that Travis and Bo would not hear her.

The above evidence adequately supports the Board's determination that Jensen neglected a vulnerable adult. A reasonable trier of fact could find from the evidence that the consequence of Jensen's decision to leave Travis and Bo unsupervised in the residence was that Travis could be assaulted again and Jensen would not be there to prevent it from happening. A reasonable trier of fact could also find that, given Jensen's acknowledgement of Bo's service plan and knowledge of the earlier assault, her decision to step outside demonstrated a serious disregard of a clear and present danger to Travis's safety. Particularly when viewed favorably to DSHS, as required, substantial evidence supports the Board's finding of neglect.

\*     \*     \*

In sum, only one of the findings challenged by Jensen is not supported by evidence that is substantial, and that finding relates to an issue that is immaterial to the Board's determination that Jensen neglected a vulnerable adult. Accordingly, Jensen has not established an entitlement to relief under RCW 34.05.570(3)(e).

B

Next, citing RCW 34.05.570(3)(f), which authorizes relief if "[t]he agency has not decided all issues requiring resolution by the agency," Jensen argues we should grant relief from the Board's decision because it failed to (a) make an explicit finding that she was not in earshot of Bo and (b) specify what testimony was "not credible." We disagree with both arguments.

Courts have interpreted RCW 34.05.570(3)(f) "to require, as a threshold matter, that the agency decide an issue before this court can reach the merits of the issue on appeal." *Puget Soundkeeper All. v. Pollution Control Hr'ngs Bd.,* 30 Wn. App. 2d 360, 387, 545 P.3d 333 (2024). Thus, for example, "When an agency fails to address an issue or supplies no reason for a decision, based on an erroneous legal conclusion that leads an agency either to not decide or to inadequately decide an issue, a legal ground for remand under RCW 34.05.570(3)(f) and further proceedings before the agency arises." *Suquamish Tribe v. Cent. Puget Sound Growth Mgmt. Hr'ngs Bd.*, 156 Wn. App. 743, 778, 235 P.3d 812 (2010).

Jensen has not established any such need for further agency findings or proceedings regarding the Board's finding of neglect. While the Board did not make an express finding that Jensen was not in earshot of Bo, it adequately addressed this issue as follows:

> The consequence of leaving Travis and Bo inside unsupervised is that Travis could be assaulted again, and [Jensen] would not be there to prevent it from happening. *While [Jensen] maintains that she could hear Bo and she could react if she believed Bo was leaving his room, she was distracted outside the home talking to an upset friend and maintaining her privacy. There is no certainty that she would have been able to hear Bo or Travis or that even if she did hear them, she would not be able to reach them in time to prevent another assault.* [Jensen's] act of going outside and leaving Travis unsupervised with Bo is more than simple negligence, but instead a choice she made despite knowing of Bo's propensities and that an incident had occurred between the men a week earlier.

(Emphasis added.) This is sufficient to support a finding of neglect as defined in RCW 74.34.020(15)—as the discussion in section II.A above confirms—and we need not remand for further findings on this issue.

- 11 -

As to Jensen's argument that "neither the ALJ nor the [Board] found that [Jensen] was not credible," Jensen misreads the record. Addressing that issue, the ALJ found:

> [Jensen] provided some contradicting statements regarding her location and the events that transpired on April 9, 2021. However, the statements and information gathered at the time of the incident and during the course of the investigation are found to be more credible than [Jensen's] statements made several years later and after knowing the results of the investigation.

The Board, in turn, expressly adopted the ALJ's findings and conclusions and likewise found:

> Some of [Jensen's] testimony differed from the statements she made during the course of the investigation. The undersigned finds the statements made to the investigator to be more credible than her testimony given at trial more than three years after the incident and after knowing the result of the investigation.

Thus, both the ALJ and the Board found that Jensen's trial testimony was not credible on issues that she had stated differently when previously interviewed. We need not remand this issue for further findings.

In short, Jensen has not established we should grant relief under RCW 34.05.570(3)(f).

C

Lastly, citing RCW 34.05.570(3)(i), which authorizes relief if "[t]he order is arbitrary or capricious," Jensen asserts the Board's decision is arbitrary and capricious because it "indulged in speculation to camouflage its failure to find Bo was not within earshot of [Jensen]" and did not carefully consider the record. We disagree.

"A decision is arbitrary and capricious if it is willful and unreasoning and disregards or does not consider the facts and circumstances underlying the decision." *Stewart v. Dep't of Soc. & Health Servs.*, 162 Wn. App. 266, 273, 252 P.3d 920 (2011). But a "decision is not arbitrary or capricious if there is room for more than one opinion and the decision is based on honest and due consideration, even if this court disagrees with it." *Id.* The scope of review under this standard is "very narrow" and the party seeking to establish that agency action is arbitrary and capricious "must carry a heavy burden*." Karanjah v. Dep't of Soc. & Health Servs.*, 199 Wn. App. 903, 925, 401 P.3d 381 (2017) (quoting *Pierce County Sheriff v. Civil Serv. Comm'n of Pierce County*, 98 Wn.2d 690, 695, 658 P.2d 648 (1983)).

Jensen fails to carry this heavy burden. She argues the Board's decision is arbitrary or capricious because there is no basis in the record to support the Board's conclusion that she was distracted while outside on a phone call. But as set forth above, the Board made all necessary findings to conclude that Jensen neglected a vulnerable adult and substantial evidence supports its determination. Jensen also attempts to argue the Board disregarded or did not consider the facts and circumstances underlying its decision because it misstated the date on which she signed Bo's service plan and misidentified a witness as "Mr. Achord" rather than "Miss Achord." Neither of these errors is sufficient to establish that the decision is not based on honest and due consideration of the facts and circumstances showing that Jensen neglected a vulnerable adult.

As with Jensen's other arguments, she fails to establish an entitlement to relief under RCW 34.05.570(3)(i).[4]

III

In sum, the challenged findings and conclusions are supported by substantial evidence, the Board decided all pertinent issues, and the Board did not act arbitrarily or capriciously in concluding that Jensen neglected a vulnerable adult. We therefore affirm the Board's final order and deny Jensen's request for prevailing party attorney fees under the Equal Access to Justice Act.[5]

Affirmed.

_Feldman, J._

WE CONCUR:

_Bowman, J._                    _Coburn, J._

---

[4] Jensen also complains that "Hauge did not come to the property to investigate Ms. Jensen" and therefore "lost the opportunity to determine whether Ms. Jensen was out of earshot of Bo when she was outside the house." Jensen does not provide any legal argument or citation to authority explaining how this assertion warrants relief under the APA. *See* RAP 10.3(a)(6). Nor does this assertion undermine Hauge's subsequent investigation or the Board's final order.

[5] Under the Equal Access to Justice Act, "a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees." RCW 4.84.350(1). Jensen did not prevail here.