[No. 36602. Department Two. July 18, 1963.]

L. N. (RAY) FERREE, *Appellant*, v. THE DORIC CO. *et al.*, *Respondents.**

*Croson, Johnson & Wheelon, Willard Hatch,* and *Herman S. Siqueland,* for appellant.

*Rosling, Williams, Lanza & Kastner,* by *Joseph J. Lanza* and *Robert H. Lorentzen,* for respondents.

RYAN, J.†—Appellant, as trustee in bankruptcy, brought this action to recover either the possession of the leasehold interest, chattels, name, and good will of Von's Cafe, or the value of that property. In order to fully understand the problems presented to us, it is necessary that we

*Reported in 383 P. (2d) 900.

†Judge Ryan is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

examine the facts which gave rise to the present controversy.

In September, 1955, Crossroads, Inc. (now Cirod, Inc.), a wholly-owned subsidiary of the respondent, The Doric Company, was the owner of the leasehold interest, chattels, and good will of a going restaurant business known as Von's Cafe, located in Seattle, Washington. The Doric Company managed this restaurant under an agreement with Crossroads, Inc., and Mr. Clifford Warling was The Doric Company's employee who supervised the operation.

In late September, 1955, Mr. Warling made an offer, individually, to purchase Von's Cafe, through Ed C. Metzger, Inc., a broker, representing the seller. His offer was not accepted, but a counter offer was made by The Doric Company and was accepted. Mr. Warling advised the employees and suppliers of Von's Cafe on October 1, 1955, that he was assuming personal management of the business.

October 4, 1955, articles of incorporation of Von's, Inc., the purpose of which was to become the purchaser of Von's Cafe, were filed with and approved by the Secretary of State. On that same day, Ed C. Metzger, Inc., the broker representing the seller, sent to the seller, The Doric Company, a check for $46,250, representing the purchaser's down payment of $50,000, less the broker's commission. The balance to be paid on contract was $100,000. There was enclosed with the broker's check to the seller, a letter stating that delivery had been made as of October 1, 1955, and that the inventory had been taken. It further stated that the only thing remaining to be done was the drafting of a contract by the seller's attorney.

The original plan was that the purchase was to be made by Mr. Warling, individually, but, on October 10, 1955, Mr. Warling informed the seller's attorney that Von's, Inc., was to be the purchaser, and a contract was drawn accordingly. Mr. Warling continued as an employee of The Doric Company after he negotiated this purchase, and his salary was continued as it had been previously, until December 1, 1955, when it was reduced.

October 4, 1955, The Doric Company assigned and transferred its Class H liquor license for the operation of Von's Cafe to Von's, Inc., subject to the approval of the State Liquor Control Board. The operation of the restaurant continued without interruption during all of the times with which we are here concerned.

After October 1, 1955, The Doric Company charged a management fee for bookkeeping, ordering supplies, and a charge to central overhead and, when the transaction was finally completed, the accounts were adjusted as of October 1, 1955. During this period, all receipts of the restaurant were deposited in a checking account in the name of Von's Cafe, an account belonging to Crossroads and used exclusively for Von's Cafe. This was done until November 22, 1955, and all disbursements were made by Crossroads until November 17, 1955. Von's, Inc., opened its own account on November 25, 1955. There was testimony that the purchaser demanded the transfer of the liquor license be completed, and also that the lease be assigned before the property would be accepted.

After November 22, 1955, The Doric Company submitted a closing summary to Von's, Inc., accounting for receipts through November 22, 1955, for disbursements through November 17, 1955, and debiting the purchaser for the management fee through November 22, 1955. The seller's attorneys prepared the conditional sale contract which was signed on November 28, 1955, as of October 1, 1955. It included the leasehold interest, chattels, and good will. The lease assignment, consent to assignment, and acceptance of assignment were also signed and executed November 28, 1955, as of October 1, 1955. The contract of conditional sale was filed with the King County Auditor on November 30, 1955.

On November 29, 1955, the seller gave Von's, Inc., a check for sums due for operation of the cafe from October 1, 1955, through November 22, 1955. A bill of sale for the chattels, dated November 30, 1955, was delivered, together with the lease assignment, to an attorney to hold

in escrow until complete performance of the conditional sale contract. The application for transfer of license was made to the Washington State Liquor Control Board and received by it October 6, 1955. The Board indicated its approval of this transfer prior to the execution of the conditional sale contract on November 28, 1955, but it was not until December 9, 1955, that the transfer was formally approved and a new license issued.

In April, 1960, Von's, Inc., advised the respondents that it was insolvent, after having fallen behind in rental and contract payments. The contract was thereafter declared forfeited, and the respondents repossessed the business. Later, a receiver was appointed by the King County Superior Court and demand was made by him for the possession of the leasehold, good will, and chattels of Von's, Inc., but this demand was refused. Subsequently, the appellant was appointed trustee in bankruptcy, qualified as such, and secured authority to institute this action.

The appellant assigns error to the trial court's findings of fact, conclusions of law, and judgment, which determined that the conditional sale contract was valid in its entirety and was timely filed. These assignments of error may be divided into two parts. Appellant's first contention is that a leasehold interest, the name, and good will of a business are not proper subjects of a conditional sale contract, as a matter of law, and, consequently, these were sold absolutely, and the appellant is entitled to judgment for possession of them or for their value.

The second part of appellant's argument is that, even if a leasehold interest, the name, and good will are proper subjects of a conditional sale contract, the trial court's determination that the contract was timely filed and its judgment are not supported by any finding or evidence relative to the date of possession. Referring to appellant's first contention, we are satisfied that leasehold interests and the name and good will of a business are proper subjects of a conditional sale contract.

■ In 1955, the time with which we are concerned, RCW 63.12.010 provided in part as follows:

"That all conditional sales of personal property, or leases thereof, containing a conditional right to purchase, where the property is placed in the possession of the vendee, shall be absolute as to all *bona fide* purchasers, pledgees, mortgagees, encumbrancers and subsequent creditors, whether or not such creditors have or claim a lien upon such property, unless within ten days after the taking of possession by the vendee, a memorandum of such sale, stating its terms and conditions, . . . shall be filed in the auditor's office of the county, wherein, at the date of the vendee's taking possession of the property, the vendee resides. . . ."

In the case of *In re Barclay's Estate,* 1 Wn. (2d) 82, 85, 95 P. (2d) 393 (1939), which was concerned with determining the nature of a leasehold interest for tax purposes, as to whether it is real or personal property, it was said:

"There can be no question but that, under our statutes and decisions, a leasehold interest in real estate for a term less than life is personal property. . . .

" . . .

"See *Taylor v. Basye,* 119 Wash. 263, 205 Pac. 16; *Myers v. Arthur,* 135 Wash. 583, 238 Pac. 899; *Salisbury v. Alskog,* 144 Wash. 88, 256 Pac. 1030; *Sakris v. Eagle Indemnity Co.,* 176 Wash. 73, 28 P. (2d) 316; *Irons Inv. Co. v. Richardson,* 184 Wash. 118, 50 P. (2d) 42. We cite the foregoing cases as showing that a leasehold has generally been considered as personal property in this state."

In *Smith v. Larson,* 36 Wn. (2d) 236, 243, 217 P. (2d) 326 (1950), the plaintiff brought action to recover possession of certain personal property and a leasehold interest that had been sold under a conditional sale contract, as to which the vendee was in default. The contract included the name, good will, lease, furniture, and fixtures. An assignment of leasehold interest had been executed at the same time as the contract, and was referred to therein and sold under the terms of that contract. The court held that the lessee's interest was subject to the conditional sale contract, and that

" . . . the assignment of the lessee's interest in the lease, having been executed simultaneously with the conditional sale contract, and having been referred to therein, was, as between the original parties and their successors, subject to the same conditions as *the other personal property* described in the conditional sale contract." (Italics ours.)

The court, in this case, cited the earlier case of *Merrick v. Neely,* 143 Wash. 588, 255 Pac. 936 (1927), which also involved a vendor's leasehold interest as the subject matter of a conditional sale contract.

The same conclusion relative to the name and good will is readily reached without serious question. This court has already held that good will is personal property and it necessarily follows that, as such, it is a proper subject of a conditional sale contract.

" . . . The good will of the business is a species of personal property, and although inseparable from business, is an appreciable part of the assets of a concern, both in fact and in the estimation of the courts. . . ." *Stanton v. Zercher,* 101 Wash. 383, 391, 172 Pac. 559 (1918).

" . . . Good will is 'property' in the legal sense of the term, and subject to sale in connection with the business precisely as other personal property is subject to sale. . . ." *Cooper & Co. v. Anchor Sec. Co.,* 9 Wn. (2d) 45, 53, 113 P. (2d) 845 (1941).

We must, therefore, reach the inescapable conclusion that the leasehold interest, name, and good will constituted personal property under the provisions of RCW 63.12.010, and, as such, are proper subjects of a conditional sale contract, so that inclusion of them in a conditional sale contract does not result in an absolute sale. The appellant argues, however, that, even if leases and good will are proper subjects of a conditional sale contract, the trial court's conclusion that the contract was timely filed and its judgment are not supported by any finding or evidence as to the date of possession. In support of this contention, the appellant relies, in large measure, on the trial court's oral decision rendered immediately following the trial. It must be remembered that a trial judge's oral decision

is no more than a verbal expression of his informal opinion at that time. It is necessarily subject to further study and consideration, and may be altered, modified, or completely abandoned. It has no final or binding effect, unless formally incorporated into the findings, conclusions, and judgment. In the case of *Clifford v. State,* 20 Wn. (2d) 527, 530, 148 P. (2d) 302 (1944), we stated:

" . . . In *Quigley v. Barash,* 135 Wash. 338, 237 Pac. 732, in answer to the contention of appellant that the trial court, at the conclusion of the testimony, gave an oral decision contrary to its written findings, we held that the court's oral decision was not a finding of fact and that the final ruling was 'within the breast of the court' until it entered its formal findings. See, also, *Colvin v. Clark,* 96 Wash. 282, 165 Pac. 101; *In re Patterson,* 98 Wash. 334, 167 Pac. 924; *Swanson v. Hood,* 99 Wash. 506, 170 Pac. 135."

Again, in *Rutter v. Rutter,* 59 Wn. (2d) 781, 370 P. (2d) 862 (1962), we pointed out that assignments of error directed to statements contained in a trial court's oral decision do not constitute proper assignments of error. We further said that such statements, when at variance with the findings, cannot be used to impeach the findings or judgment. On the other hand, if the court's oral decision is consistent with the findings and judgment, it may be used to interpret them.

The trial court, in the instant case, made the following conclusion of law:

"That the contract of conditional sale herein was filed within ten days after the taking of possession of the property described therein by the vendee, and therefore valid as against the claims of all subsequent creditors of Von's, Inc."

It must, therefore, be observed that, although the trial court omitted any specific finding as to the date of possession, it did make the foregoing conclusion of law touching upon this subject. Since this conclusion of law partakes of the nature of a finding of fact, it may be treated as such. *Hoke v. Stevens-Norton, Inc.,* 60 Wn. (2d) 775, 375 P. (2d) 743 (1962); *Coolidge v. Pierce Cy.,* 28 Wash. 95, 68 Pac. 391 (1902); 53 Am. Jur., Trial § 1138, p. 793; 89 C.J.S., Trial § 647, p. 487.

■ The trial court, therefore, made a finding as to the ultimate fact that the contract was filed within 10 days of the taking of possession. As long as possession was taken within this 10-day period, it is of little concern on what particular day that might have been. The burden of proof rested on the appellant to show that possession was not taken within the requisite 10-day period. There are some conflicts in the testimony and certain facts are not without dispute, but it is the firmly established rule that this court will not retry factual disputes upon appeal, and that, if the findings of the trial court are supported by substantial evidence, we must treat them as verities. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn. (2d) 570, 575, 343 P. (2d) 183 (1959); *Seattle v. Nazarenus*, 60 Wn. (2d) 657, 374 P. (2d) 1014 (1962); *Nicolai v. Transcontinental Ins. Co.*, 61 Wn. (2d) 295, 378 P. (2d) 287 (1963).

A careful consideration of the record in this case convinces us that the trial court reached a proper decision, amply supported by substantial credible evidence. The consummation of this transaction was delayed because of difficulties encountered in securing the landlord's consent to the assignment of the lease, and the uncertainty as to whether the Liquor Control Board would approve and grant the transfer of the liquor license to Von's, Inc. Possession by the vendee was withheld until all doubt had been dissipated, and the vendor was in a position to make complete delivery of all that had been sold.

It is inconceivable that an experienced restaurateur, as Mr. Warling obviously was, would have taken possession of this business and bound himself or the corporation of which he was the principal stockholder to a contract of purchase before having positive assurance that the liquor license would be transferred and the lease assigned. He was fully aware of these necessities because, otherwise, as shown by the evidence, he might, in effect, have been buying no more than a stock of perishable food, a supply of used china and silver, and so many pots and pans. It was unquestionably the intention of the parties that pos-

session would not be taken until such time as complete delivery could be made and, accordingly, it was not accomplished until then.

It is our opinion that the judgment of the trial court is based upon proper findings adequately supported by substantial evidence relative to the date possession was taken, and that this date was within 10 days of the filing of the contract of conditional sale.

The judgment is affirmed.

OTT, C. J., DONWORTH, FINLEY, and HAMILTON, JJ., concur.