IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| JULIE L. BRANNBERG, | ) | No. 76029-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSEPH G. BRANNBERG, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 6, 2017 |

SCHINDLER, J. — A commissioner granted Julie Brannberg's motion for a

domestic violence protection order (DVPO) restraining Joseph Brannberg from having

contact with their daughters M.B. and K.B. The superior court denied the motion to

revise but disagreed with several of the commissioner's inconsistent and contradictory

findings of fact and conclusions of law. Because the record establishes the court's oral

findings are based on the record before the commissioner and support denial of the

motion to revise the DVPO, we affirm but remand for entry of written findings of fact and

conclusions of law.

FACTS

DVPO Petition

Joseph and Julie[1] are the parents of four daughters. The June 2009 parenting

plan provides for equal residential time.

_____

[1] We refer to Joseph Brannberg and Julie Brannberg by their first names for clarity.

On March 19, 2015, Julie filed a petition for a domestic violence protection order (DVPO) to restrain Joseph from having contact with 11-year-old M.B. and 13-year-old K.B.

Julie alleged that on March 15, 2015, Joseph forced M.B. to stay at the kitchen table for an hour and a half until her homework was completed even though she was "screaming and crying" the entire time.[2] Joseph yelled at M.B., "pounded his fists" on the table next to her, and told her he " 'was so angry that he could kick the fuc**** wall.' " M.B. told her mother she " 'didn't know what he was going to do next.' " K.B. said that while she was in her room, she was "scared by a loud noise that 'shook' when [Joseph] slammed his fists down" on the table.

Julie alleged that on August 28, 2014, Joseph and K.B. argued. K.B. said Joseph was yelling at her "so loudly . . . she thought the neighbors would hear him." K.B. said Joseph is "constantly yelling at her and demeaning her." After the argument, K.B. went to her room. When Joseph walked in her room, he saw K.B. writing a "suicide note" and saw "pills all over the floor and several razors on the table." Joseph immediately called Julie for help. According to Julie, they "attended an emergency therapy session with [K.B.]'s therapist" and "it became abundantly clear that Joe's actions that night had caused [K.B.] to try to harm herself." Julie states K.B. "has resided with me full-time since the August 28, 2014 suicide threat, with Joe's agreement."

---

[2] M.B. was diagnosed at two years old with leukemia. Due to the side effects of chemotherapy from age three to five, M.B. has a "very short attention span" and difficulty "focusing on one task for longer than 10-15 minutes at a time." Doctors informed Julie and Joseph that M.B. "should not be pushed past her limits, academically or socially."

Julie asserted that in addition to the August 28, 2014 incident, in "2012/2013," Joseph got angry with K.B. and "put his hands around her neck with extreme force to lifter her up."

> [K.B.] was at Joe's home when he grew angry with [K.B.], began to yell and scream at her and proceeded to put his hands around her neck with extreme force and lift her up. My oldest daughter . . . witnessed this incident. [K.B.] was extremely hurt and distressed over this specific incident and has now become extremely fearful of her father and is fearful of what he is capable of doing to her.

On March 19, 2015, the court issued a temporary DVPO restraining Joseph from "coming near or having any contact" with Julie, M.B., and K.B. pending a hearing.

DVPO Hearing

Before the hearing, the parties filed several declarations from Julie, Joseph, the girls' mental health counselors, and friends and the 2009 sealed "Final Report of Guardian ad Litem" (GAL report).

In May 2015, Julie, Joseph, and the girls' mental health counselors testified during the two-day hearing. On June 24, 2015, the commissioner entered written findings of fact and conclusions of law and a one-year DVPO preventing Joseph from having contact with M.B. and K.B.

Motion to Revise

Joseph filed a motion to revise the DVPO. Joseph argued the commissioner entered inconsistent and contradictory findings of fact and conclusions of law that did not support entering a DVPO.

3

For instance, one finding of fact states, "The court finds that the incident in May [sic] of 2015 does constitutes [sic] domestic violence."[3] But the court finds there was no "risk of imminent bodily harm."

> The incident was disturbing to the children and even by Mr. Brannberg's testimony constitutes an inappropriate response to a frustrating situation, it is <u>not</u> an event that would have lead [sic] a reasonable individual to believe they were at risk of imminent bodily harm.[4]

Another finding states the August 2014 incident did not constitute domestic violence.

> The court finds that the incident from August of 2014 does <u>not</u> constitute domestic violence. It appears that in this situation Mr. Brannberg lacked the appropriate parenting skills to manage his frustration with his children.[5]

Joseph also argued the commissioner erred by finding that he pounded a table in front of M.B. and that he placed his hands around K.B.'s throat to lift her up.

The superior court disagreed with some of the commissioner's findings but agreed with the decision to enter a DVPO as to M.B. and K.B. In the oral ruling, the court noted that one of the issues in the 2009 GAL report was Joseph's inability to control his anger.

> The report identifies that there was contact with Colleen Hicks as far back as 2008 and that in the counseling session with Colleen Hicks [the oldest daughter] indicated that sometimes she's afraid of Dad. She has seen him throw a dresser. So that is consistent with what ultimately came up during the protection order hearing with the slamming down of the hand, saying that I'm going to kick the F'ing wall, that type of uncontrolled anger. It does make kids afraid, not afraid of being disciplined, not being afraid of being sent to their room or placed in a time-out, but they're afraid that they're physically going to be harmed. A child, although their fear could be unreasonable certainly, it's really no different than an adult. If an adult was sitting at the table, they were in an

---

[3] The finding misstates the March 2015 incident as May.
[4] Emphasis added.
[5] Emphasis added.

argument, it was a heated situation, and one party slams their hand down, starts swearing, saying that they could destroy things, it is reasonable for a person to fear that they are going to be physically harmed, not physically disciplined - there is a difference - but physically harmed.

[K.B] also indicated with Ms. Hicks back in 2008 — no, I think that was in 2009 that she was afraid when she was in the car with her dad and her dad was so angry in that November of 2008 incident.

Dr. Chickering, who had contact with the parents as a couple, said, well, Dad has some controlling characteristics. Dr. Wagaman, who was Mr. Brannberg's therapist, said no personality disorder, but dad likes structure and his control.

The court concluded the commissioner's findings related to the March 2015

incident "are wrong" and it was reasonable for M.B. to fear the infliction of imminent

harm.

But now we fast forward six years and we are in a very similar situation where Mr. Brannberg was unable to control himself, unable to control his anger, but it's not just anger. It is using fear to control. That is domestic violence.

The incident — the findings are wrong. The findings say the incident was in May of 2015. It was in March of 2015. That was an act of domestic violence, and it was reasonable that [M.B.] was fearful that her father was going to physically harm her, more than discipline her, but physically harm her based upon his actions. And many of it — although there are some fine differences between the testimony and the information submitted, what happened is generally not disagreed to as it relates to that date.

The court also concluded the record supported finding acts of domestic violence

against K.B.

[T]here is no basis to revise as to the act of domestic violence towards [K.B.]. . . . There is substantial evidence in the record to support [the] findings of the act of domestic violence against [K.B.], and I will not revise the protection order.

The court denied Joseph's motion to revise entry of the one-year DVPO but did

not enter written findings of fact and conclusions of law.

## ANALYSIS

Preliminarily, Joseph argues the appeal is not moot. Although the DVPO expired on June 24, 2016, because the DVPO implicates RCW 26.09.191, we agree. See RCW 26.09.191(1)(c) ("The permanent parenting plan shall not require mutual decision-making or designation of a dispute resolution process other than court action if it is found that a parent has engaged in . . . a history of acts of domestic violence."), .191(2)(a)(iii) ("The parent's residential time with the child shall be limited if it is found that the parent has engaged in . . . a history of acts of domestic violence.").

Joseph contends the commissioner abused its discretion by failing to allow adequate time to present evidence and imposing time limits on cross-examination. A commissioner has broad discretion to determine whether to allow cross-examination in a DVPO hearing. Aiken v. Aiken, ___ Wn.2d ___, 387 P.3d 680, 687 (2017). The commissioner did not abuse its discretion. While the court placed time limits on cross-examination for both parties, the court placed no limits on the submission of written declarations and evidence.

Joseph asserts the superior court erred in denying his motion to revise and vacate the DVPO. Here, the court denied the motion to revise based on the record before the commissioner. The court's oral ruling establishes the court agreed with the decision to enter the DVPO as to M.B. and K.B. but clearly did not agree with several of the commissioner's findings. Joseph contends he is entitled to reversal of the DVPO because the court denied the motion to revise without entering written findings and therefore adopted the commissioner's contradictory findings and conclusions that do not support entry of the DVPO. The record does not support his argument.

Chapter 26.50 RCW governs entry of a DVPO. A person may file a petition for protection on behalf of a minor household member. RCW 26.50.020(1)(a). The petitioner can request entry of a protection order based on "the infliction of fear of imminent physical harm . . . between family or household members." RCW 26.50.010(3)(a). We review the decision to grant or deny a protection order for abuse of discretion. In re Marriage of Stewart, 133 Wn. App. 545, 550, 137 P.3d 25 (2006); In re Parentage of T.W.J., 193 Wn. App. 1, 6, 367 P.3d 607 (2016). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014).

The decision of a court commissioner is subject to revision by the superior court. RCW 2.24.050.[6] RCW 2.24.050 states, in pertinent part:

> All of the acts and proceedings of court commissioners hereunder shall be subject to revision by the superior court. Any party in interest may have such revision upon demand made by written motion, filed with the clerk of the superior court, within ten days after the entry of any order or judgment of the court commissioner. Such revision shall be upon the records of the case, and the findings of fact and conclusions of law entered by the court commissioner.

On revision, the superior court reviews de novo the findings of fact and conclusions of law of the commissioner based upon the evidence and issues presented to the commissioner. State v. Ramer, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). On revision, the superior court can adopt the decision of the commissioner "either expressly or by clear implication from the record." In re Dependency of B.S.S., 56 Wn. App. 169, 170, 782 P.2d 1100 (1989). Where the superior court does not agree with the decision of the commissioner on revision, we review only the superior court decision. Ramer,

---

[6] See also WASH. CONST. art. IV, § 23.

7

151 Wn.2d at 113. The superior court is "authorized to determine its own facts based on the record before the commissioner." In re Marriage of Dodd, 120 Wn. App. 638, 644, 86 P.3d 801 (2004). But an oral ruling has no final or binding effect unless formally incorporated into an order. Ferree v. Doric Co., 62 Wn.2d 561, 566-67, 383 P.2d 900 (1963).

We affirm entry of the DVPO but remand to the superior court for entry of written findings of fact and conclusions of law.[7]

WE CONCUR:

Schindler, J.

Trickey, J.

Verellen, C.J.

---

[7] We deny the request for attorney fees under RCW 26.50.060(1)(g).