IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SVN CORNERSTONE, LLC, a Washington Limited Liability Company, | ) ) ) | No. 35995-6-III |
| Appellant, | ) ) | |
| v. | ) ) | |
| N. 807 INCORPORATED, a Washington corporation, d/b/a BERKSHIRE HATHAWAY HOMESERVICES FIRST LOOK REAL ESTATE; KENNETH M. LEWIS and MICHELLE S. LEWIS, and the marital community composed thereof; and HENRY SEIPP and JANE DOE SEIPP, and the marital community composed thereof, | ) ) ) ) ) ) ) ) ) ) ) | OPINION PUBLISHED IN PART |
| Respondents. | ) | |

PENNELL, J. — SVN Cornerstone, LLC (Cornerstone) appeals several superior court orders permitting former employee Henry Seipp to go forward with an arbitration complaint for lost real estate commissions. Cornerstone argues that Seipp's claims should have been raised in the parties' prior litigation,[1] and therefore Seipp's current claims are barred by the doctrine of res judicata and as waived compulsory counterclaims.

---

[1] *See SVN Cornerstone LLC v. N. 807 Inc.*, No. 34692-7-III (Wash. Ct. App. May 23, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/346927_unp.pdf.

Because Cornerstone's arguments regarding res judicata and compulsory counterclaims are defenses to the merits of Seipp's arbitration complaint, they must be decided in arbitration, not by a court. Although there are circumstances in which a court should determine whether a prior judgment precludes a subsequent arbitration claim under a theory of res judicata, this case is not one of them. The parties' prior suit was resolved through a negotiated, out of court settlement agreement—not by a trial or contested motions. Given this circumstance, this court has no special role to play in discerning the scope of the prior litigation or the applicability of res judicata. Instead, because Seipp's claim for commissions properly belongs in arbitration, the defense of res judicata and related issues must be decided in that forum.

## BACKGROUND

Seipp worked for Cornerstone until April 20, 2015, when he left to work as a broker for Berkshire Hathaway Home Services First Look Real Estate (Berkshire).[2] Prior to Seipp's departure, Cornerstone had developed a marketing package for the sale of the Timber Court Apartments owned by EZ Properties, LLC. Two days after Seipp associated with Berkshire, Berkshire and EZ Properties entered into an exclusive listing

---

[2] The corporation, N. 807 Incorporated, will be referred to by one of its registered trade names rather than its corporate entity name.

agreement to sell the Timber Court Apartments. Berkshire sold the Timber Court

Apartments, and once Cornerstone learned of the sale it asserted it was entitled to a

commission from the sale. The final sale agreement for the property listed Seipp as the

listing broker and Berkshire as the listing firm.

Cornerstone filed a complaint in Spokane County Superior Court against

Berkshire, its owners, and Seipp, alleging Seipp's involvement in the sale of the Timber

Court Apartments breached his independent contractor agreement with Cornerstone.

Cornerstone also made claims for unjust enrichment, tortious interference with contract,

violation of the Uniform Trade Secrets Act, chapter 19.108 RCW, conversion, and breach

of the fiduciary duty of loyalty. Berkshire responded to Seipp's complaint by alleging

Cornerstone's claims were subject to arbitration with the Commercial Brokers

Association (CBA), since all the parties were members of the CBA and were required to

arbitrate some disputes. Berkshire and Seipp then filed for dismissal and to compel

arbitration. Cornerstone filed a cross motion for partial summary judgment for its breach

of contract claim. The superior court declined to compel arbitration and denied the

motion to dismiss.

In May 2017, this court affirmed the superior court's decision to not dismiss the

complaint, but reversed the denial of the motion to compel arbitration, finding the plain

language of the CBA's bylaws required arbitration of all of Cornerstone's claims related to lost commissions. We allowed that the superior court could retain jurisdiction over any claims unrelated to commissions.

Cornerstone petitioned for review by the Washington Supreme Court. While the petition was pending, the parties privately negotiated a settlement. Under the terms of their settlement agreement, Seipp agreed to pay Cornerstone $20,000, Cornerstone agreed to dismiss its Supreme Court petition for review, and the parties agreed the superior court case would be dismissed with prejudice and without attorney fees or costs to any party. The settlement agreement contained a one-sided release provision, in that Cornerstone agreed to release its claims against Seipp, but Seipp did not waive any claims or potential claims against Cornerstone. The agreement specified that disputes arising from the agreement would be decided in Spokane County Superior Court. On August 22, 2017, a stipulation and order of dismissal with prejudice was entered in Cornerstone's superior court lawsuit. The stipulation and order did not refer to the settlement agreement or cite the reasons for dismissal.

Prior to finalization of the settlement agreement, Seipp was approached by an individual named Dennis Crapo. Crapo had hoped to enlist Seipp's services in selling some commercial property. But when Seipp informed Crapo about the ongoing litigation

with Cornerstone, Crapo decided to proceed with another broker. Crapo ultimately sold the property on August 28, 2017.

Seipp filed an arbitration complaint with the CBA against Cornerstone during September 2017 (the month after entry of the stipulated dismissal order). In his complaint, Seipp alleged Cornerstone's prior lawsuit caused him to lose the opportunity to list and sell Crapo's property, which could have resulted in a commission of over $1 million. Seipp asserted several causes of action: perversion of the court, malicious prosecution, failure to arbitrate, and tortious interference with business relations. In his prayer for relief, Seipp requested lost commissions for Crapo's property, punitive damages, and $60,000 for attorney fees and costs incurred in defending the recently dismissed lawsuit related to the Timber Court Apartments commissions.

Seipp later amended the arbitration complaint to remove the request for punitive damages and attorney fees and costs, but prior to this Cornerstone filed a complaint in superior court for breach of contract against Seipp and Berkshire (hereinafter collectively Seipp). Cornerstone alleged Seipp breached the terms of the settlement agreement by seeking an award of attorney fees and costs incurred in the first lawsuit in the arbitration complaint. Cornerstone requested damages and injunctive relief to prevent the CBA from arbitrating claims that were dismissed in the first lawsuit via the settlement agreement.

Cornerstone moved for summary judgment on its complaint on January 5, 2018. Cornerstone argued Seipp's arbitration complaint was barred by the parties' settlement agreement. Cornerstone also argued Seipp's claims were barred by the doctrine of res judicata and that Seipp waived his claims by failing to bring them as compulsory counterclaims in the prior litigation. Cornerstone requested the superior court address the issues of res judicata and compulsory counterclaims by issuing an injunction, prohibiting Seipp from going forward with his claims in arbitration.

Shortly after Cornerstone's motion for summary judgment, Seipp filed a CR 12(b)(6) motion to dismiss, arguing that because Seipp amended the arbitration complaint to remove the claims for punitive damages and attorney fees and costs, Cornerstone had failed to state a claim upon which relief could be granted. Seipp also argued the settlement agreement did not bar Seipp's amended arbitration complaint.

In response to Cornerstone's motion for summary judgment, Seipp made a two-fold argument. First, Seipp claimed Cornerstone's arguments regarding res judicata and compulsory counterclaims were defenses to the pending arbitration complaint and needed to be raised in arbitration. Second, Siepp argued Cornerstone's claims on the merits, contending the arbitration complaint was not barred by res judicata or waived compulsory counterclaims.

During the pendency of the superior court motion practice, Cornerstone filed a motion to amend its complaint, adding a cause of action for declaratory judgment. Cornerstone's request for declaratory relief pertained to its arguments regarding res judicata and compulsory counterclaims. The superior court granted Cornerstone leave to amend the complaint.

Seipp subsequently filed a motion to dismiss the amended complaint. Again, Seipp argued the amended arbitration complaint was not barred by the parties' settlement agreement and that the issues of res judicata and compulsory counterclaims needed to be decided in arbitration, not superior court.

The superior court issued several written rulings in response to the parties' motions. The court granted Cornerstone's motion for summary judgment in part after determining Seipp had breached the terms of the settlement agreement by seeking attorney fees and costs in the arbitration complaint. The court denied Cornerstone's motion to enjoin Seipp's arbitration complaint, concluding Cornerstone had not made a requisite showing of imminent irreparable injury. The court also granted Seipp's motion to dismiss. Although the superior court made some oral comments regarding the parties' arguments on res judicata and compulsory counterclaims, the court never issued a written ruling addressing Cornerstone's request for declaratory judgment on these matters.

Cornerstone now appeals the superior court's adverse rulings.

ANALYSIS

In their briefing, the parties operate under the mistaken assumption that the superior court decided the merits of Cornerstone's res judicata and compulsory counterclaim arguments. In fact, the court never entered a written ruling addressing these issues.[3] Instead, the court simply rejected Cornerstone's request to enjoin Seipp from going forward with arbitration. The court also granted Seipp's motion to dismiss, which was based in part on the claim that the issues of res judicata and compulsory counterclaims needed to be decided in arbitration, pursuant to the broad CBA rules governing arbitration.

The superior court's decision to avoid a final decision on the issues of res judicata or compulsory counterclaims was appropriate. This is because the substance of such claims are for a CBA arbitration panel to decide, not the court.

As we recognized in our prior decision, the CBA bylaws obligate Seipp and Cornerstone to arbitrate any claim regarding lost commissions "regardless of the legal

---

[3] "It must be remembered that a trial judge's oral decision is no more than a verbal expression of his [or her] informal opinion at that time. It is necessarily subject to further study and consideration, and may be altered, modified, or completely abandoned. It has no final or binding effect, unless formally incorporated into the findings, conclusions, and judgment." *Ferree v. Doric Co.*, 62 Wn.2d 561, 566-67, 383 P.2d 900 (1963).

theory." *SVN Cornerstone, LLC v. N. 807 Inc.*, No. 34692-7-III, slip op. at 10 (Wash.

Ct. App. May 23, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/

346927_unp.pdf.  In the present case, Seipp has requested arbitration based on lost

commissions from Crapo's property that is attributed to Cornerstone.  This is an arbitrable

claim.  *See id.*  Whether or not Cornerstone can prevail against Seipp's claim on the basis

of an affirmative defense[4] such as estoppel or res judicata goes to the merits of the

dispute, not the question of arbitrability.  The CBA arbitration policy does not exclude

equitable defenses such as estoppel or res judicata from the terms of its broad arbitration

clause.  Thus, Cornerstone's legal defense to Seipp's arbitration complaint falls within the

scope of the parties' arbitration agreement.  *Howsam v. Dean Witter Reynolds, Inc.*, 537

U.S. 79, 85, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (Estoppel is an issue of procedural

arbitrability that is for the arbitrator to decide.); s*ee also Yakima County v. Yakima*

---

[4] Res judicata, or claim preclusion, prevents relitigation of a claim or cause of action that has already been adjudicated or should have already been adjudicated in a prior suit.  Res judicata is an affirmative defense that must be pleaded and proved by the party seeking its application.  *See Large v. Shively*, 186 Wash. 490, 497, 58 P.2d 808 (1936); *Meder v. CCME Corp.*, 7 Wn. App. 801, 806, 502 P.2d 1252 (1972).  For res judicata to apply there must be identity of (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of persons and parties.  *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 763, 887 P.2d 898 (1995).  For background on the law of res judicata in Washington, *see* Philip A. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 WASH. L. REV. 805 (1985).

9

*County Law Enf't Officers Guild*, 157 Wn. App. 304, 321, 237 P.3d 316 (2010) (Doubts

over the scope of arbitrability are resolved in favor of arbitration.).

Cornerstone does not seriously dispute that a legal defense to Seipp's claim for lost

commission is arbitrable under the scope of the parties' arbitration agreement. Yet

Cornerstone claims special circumstances govern this case because Cornerstone's legal

defense involves the scope of a prior court order of dismissal and it is for a court to

discern the scope of a prior order, not an arbitration panel.

Courts undoubtedly have a role to play in discerning the scope of their own prior

judgments. After a case has been litigated and the court has resolved the parties' dispute,

the court may properly defend its judgment and ensure the parties do not reassert claims

that have already been decided. *See id*. at 326; *John Hancock Mut. Life Ins. Co. v. Olick*,

151 F.3d 132, 138 (3rd Cir. 1998); *In re Y&A Group Sec, Litigation*, 38 F.3d 380, 382

(8th Cir. 1994). For this reason, a majority of courts that address this issue hold that

when a res judicata "objection is based on a prior court judgment from the same

jurisdiction," application of res judicata "is a question for the trial court." *Ford Motor*

*Credit Co. v. Cornfield*, 395 Ill. App. 3d 896, 907, 335 Ill. Dec. 327, 918 N.E.2d 1140

(2009).

But here, the superior court was not involved in resolving the merits of the parties'

prior dispute. The last substantive order from the court determined that the parties needed

to present the bulk of their claims to an arbitration panel. Rather than going through the

time and expense of arbitration, the parties settled the dispute privately and submitted an

agreed order of dismissal. The court was not involved in the settlement process and was

not privy to the bases for the agreed resolution.[5] The court therefore has no unique

qualification to ascertain the scope and preclusive effect of a final judgment. An

exception to the general rule of arbitrability does not apply in such circumstances. *Ford*

*Motor Credit Co.*, 395 Ill. App. 3d at 909 (An agreed order of dismissal is unlike a

decision on the merits and does not implicate the court's duty to decide res judicata.);

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1133-34 (9th Cir. 2000)

(same with respect to order confirming arbitration award).

To the extent the superior court has an interest in defending the terms of its prior

judgment, this interest weighs in favor of arbitration. The primary issue resolved in the

prior case was that the parties' dispute over lost commissions (including any defenses

thereto) had to be decided in arbitration. To now hold that a court should decide the

---

[5] This case is therefore distinguishable from *Y&A Group Securities Litigation*, 38 F.3d at 383, which involved a court-approved consent decree.

11

scope of the prior case and whether it necessarily encompassed affirmative defenses or counterclaims would run counter to our prior decision and would deprive Seipp of the right to arbitration set forth in the CBA bylaws. *See Local Union No. 370 of Int'l Union of Operating Eng'rs v. Morrison-Knudsen Co., Inc.*, 786 F.2d 1356, 1358-59 (9th Cir. 1986) (Estoppel defenses are arbitrable and cannot be asserted in a way that deprives a party of the right to arbitration.).

Cornerstone complains that the defense of res judicata is complicated and, therefore, it should be resolved by a court instead of an arbitration panel. We are not unsympathetic to this claim. But that is the nature of arbitration. An agreement to arbitrate is enforceable, regardless of the complexity of the legal claim that winds up before the arbitration panel. *See* RCW 7.04A.060(1) (An arbitration agreement may properly cover "any . . . controversy arising between the parties.").

The superior court's orders are affirmed to the extent they hold that Seipp is not prohibited from pursuing the arbitration complaint against Cornerstone. Any defenses Cornerstone has to Seipp's complaint, including defenses related to res judicata and compulsory counterclaims, shall be determined in first instance by the CBA arbitration panel.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Even if the issues of res judicata and compulsory counterclaims were proper for the court to resolve, as opposed to an arbitration panel, Cornerstone would still need to go forward with arbitration because at least some of Seipp's claims are clearly not barred by the prior litigation. The gravamen of Seipp's arbitration complaint is that Seipp lost a commission from the sale of Crapo's property because Cornerstone tortiously interfered with Seipp's business relationship with Crapo. The elements of a tortious interference claim are: (1) the existence of a valid contractual relationship or business expectancy, (2) knowledge by the defendants of that relationship or business expectancy, (3) an intentional interference inducing or causing a breach or termination of the relationship or business expectancy, (4) improper purpose by the defendants, and (5) resultant damage. *Leingang v. Pierce County Med. Bureau*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997). Cornerstone's prior complaint did not touch on these issues. The prior complaint alleged Seipp improperly stripped Cornerstone of commissions from the sale of the Timber Court Apartments. Even if Cornerstone's complaint had been brought with an improper motive

No. 35995-6-III
*SVN Cornerstone, LLC v. N. 807 Inc.*

(and we do not wish to imply it was),[6] whether Cornerstone knew of Seipp's business relationship with Crapo and intended to interfere with that relationship are matters that were never addressed or resolved by the prior proceedings. Thus, res judicata would be inapplicable. *See Yakima County*, 157 Wn. App. at 327-28 (Res judicata requires identity of subject matter and cause of action.).

                                                                      _____
                                                                      Pennell, J.

WE CONCUR:

_____        _____
Lawrence-Berrey, C.J.               Siddoway, J.

---

[6] The question of whether Cornerstone's prior complaint should have been filed with the CBA instead of the superior court was legally debatable. The superior court originally agreed with Cornerstone that its complaint was not subject to mandatory arbitration. In addition, our prior decision indicated that at least some of Cornerstone's complaints may not have been subject to arbitration.

14