# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In re the Parenting and Support of: | ) | No. 81788-4-I |
| | ) | |
| M.M.M., | ) | |
| | ) | |
| Child, | ) | |
| | ) | |
| MATTHEW WAYNE MEYERS, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MCKAYLA SATIVA BEECHER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — When a court concludes the child's best interests warrant the imposition of restrictions under RCW 26.09.191 due to a parent's conduct, findings of fact about that parent's conduct must be supported by substantial evidence. Substantial evidence supports the finding that McKayla Beecher has a long-term emotional impairment that affects her ability to perform parenting functions, and restrictions based upon that finding were not an abuse of discretion. But because the parenting plan imposed restrictions on Beecher based in part upon findings of fact that lacked substantial evidence, remand is required to revisit and revise the parenting plan to reflect Beecher's conduct and her son's best interests. Because remand is required and recent developments likely impact a

previous finding of abuse, the abuse finding and related restrictions should be revisited.

Therefore, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

McKayla Beecher and Matthew Meyers began dating in April of 2016, her senior year of high school. The relationship was getting "near the end" in the spring of 2018 when they learned Beecher was pregnant.[1] Their son, "M," was born in December of 2018. In May of 2019, when M was six months old, they decided to separate because they were arguing about "everything" and "just stopped wanting to be around each other."[2] They came to an arrangement to share physical and legal custody of M.

In August of 2019, M was severely injured and hospitalized. Child Protective Services (CPS) and the Arlington Police Department began investigating. CPS filed a dependency petition, placing M with Meyers's sister, Jacquie Grogel, and then with Beecher's extended family. Beecher later filed a petition for a domestic violence protection order (DVPO) against Meyers.

In September of 2019, the police cleared Meyers from suspicion of injuring his son. The dependency court found Meyers was "not a risk to the child" and

---

[1] Report of Proceedings (RP) (July 9, 2020) at 88.

[2] Id. at 92.

awarded him custody over M.[3] It also did "not find the father to be the aggressor of domestic violence in the relationship"[4] and transferred the case to family court. A superior court commissioner later denied the DVPO petition, concluding Beecher failed to demonstrate domestic violence because she presented "conflicting evidence" that called her credibility into question.[5]

In February of 2020, the Arlington police filed a certificate of probable cause for Beecher, concluding probable cause existed to arrest her for first degree assault of a child, making a false or misleading statement to a public servant, and obstructing a law enforcement officer. In April, the family court entered a temporary parenting plan which limited Beecher to three, two-hour supervised visitation sessions each week. Meyers received sole decision-making authority and the authority to approve all visitation supervisors. The dependency was terminated.

A bench trial was held on a permanent parenting plan in June of 2020. Beecher proffered an expert, Dr. JoAnne Solchany, who has a Ph.D. in nursing and is an advanced registered nurse practitioner, to testify about her psychological evaluation of Beecher. Dr. Solchany diagnosed Beecher with posttraumatic stress disorder (PTSD) from M's injury and from domestic violence inflicted on her by

---

[3] Ex. 3, at 3.

[4] Id.

[5] Ex. 2, at 1.

Meyers. The court admitted Dr. Solchany's testimony but found neither Beecher nor any of her witnesses, including Dr. Solchany, were credible.

The court found Beecher abused and neglected M, used conflict in an abusive manner, had a substance abuse problem that interfered with her ability to parent, and had a long-term emotional problem that interfered with her ability to parent.

Pursuant to RCW 26.09.191, it restricted her physical and legal custody over M. The court limited Beecher to three weekly supervised visits with M, each for three hours. It gave Meyers sole decision-making authority.

Beecher appeals.[6]

ANALYSIS

## I. Evidentiary Rulings

Beecher argues the court abused its discretion by finding she and other witnesses were not credible. We review evidentiary decisions for abuse of discretion.[7] A trial court abuses its discretion when its decision rests on untenable evidentiary grounds or was made for untenable reasons, such as a ruling contrary to law.[8]

---

[6] Beecher also assigns error to the trial court "failing to enter a [DVPO] protecting the mother from the father." Appellant's Br. at 4. Because she makes no arguments in support of this assigned error, we decline to consider it.

[7] In re Wagner, ___ Wn. App. 2d ___, 496 P.3d 742, 746 (2021) (citing Blomster v. Nordstrom, Inc., 103 Wn. App. 252, 259, 11 P.3d 883 (2000)).

[8] Lakey v. Puget Sound Energy, Inc., 176 Wn.2d 909, 919, 296 P.3d 860 (2013) (citing Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 339, 858 P.2d 1054 (1993)).

4

Citing an unpublished case, State v. Scott,[9] Beecher asserts that the trial

court's credibility determinations can be reviewed for substantial evidence. But

well-established and controlling Washington law holds that when a trial court takes

live testimony and weighs the evidence, a reviewing court does not reevaluate the

credibility of witnesses or reweigh evidence.[10] When deciding child placement

decisions, a reviewing court should be particularly deferential to the trial court

"[b]ecause the trial court hears evidence firsthand and has a unique opportunity to

observe the witnesses."[11] Because, here, the trial court was acting as the

factfinder in a bench trial, we will not reevaluate its credibility determinations.

Beecher also argues the court abused its discretion by declining to admit

Dr. Solchany's testimony under ER 702. Expert testimony can be admitted under

ER 702 when the witness qualifies as an expert and their testimony will assist the

---

[9] State v. Scott, No. 45944-2-II, slip op. at 7-8, Wash. Ct. App. June 30, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2045944-2-II%20%20Unpublished%20Opinion.pdf.

[10] E.g., In re A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015) ("The reviewing court should not decide the credibility of witnesses or weigh the evidence.") (citing In re Dependency of A.V.D., 62 Wn. App. 562, 568, 815 P.2d 277 (1991)); Winter v. Dep't of Soc. & Health Servs. on behalf of Winter, 12 Wn. App. 2d 815, 839, 460 P.3d 667 ("We cannot review a fact-finder's credibility determinations on appeal.") (citing Morse v. Antonellis, 149 Wn.2d 572, 574, 70 P.3d 125 (2003)), review denied, 196 Wn.2d 1025, 476 P.3d 565 (2020).

[11] Young v. Thomas, 193 Wn. App. 427, 442, 378 P.3d 183 (2016) (citing In re Parentage of Schroeder, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001)).

factfinder.[12]  "Unreliable testimony does not assist the trier of fact."[13]  Although the trial court reserved ruling on admitting Dr. Solchany's testimony under ER 702, she was permitted to testify and opine about hypotheticals.  The court later found she was not credible and discounted her testimony.  Because determining credibility is squarely within the factfinder's discretion,[14] and the trial court concluded Dr. Solchany was unhelpful because she was not credible, Beecher fails to show the trial court abused its discretion.

II.  Parenting Plan

Beecher contends reversal and retrial are required on the parenting plan because substantial evidence does not support the findings of fact and related restrictions imposed under RCW 26.09.191.  The court found Beecher abused M, neglected him, used conflict in an abusive manner, had a long-term substance abuse problem, and had a long-term emotional impairment.  Based upon those findings, the court imposed a range of related restrictions on Beecher, which included limited, supervised contact, no decision-making authority, no control over who could be present during her visits, restrictions on her consumption of alcohol or drugs and a requirement to "shield" M from "normalizing the use of drugs and/or alcohol,"[15] urinalysis testing when demanded by Meyers, no discussing residential

---

[12] Lakey, 176 Wn.2d at 918 (citing State v. Cauthron, 120 Wn.2d 879, 890, 846 P.2d 503 (1993)).

[13] Id. (citing Anderson v. Akzo Nobel Coatings, Inc., 172 Wn.2d 593, 603, 260 P.3d 857 (2011)).

[14] A.W., 182 Wn.2d at 711 (citing A.V.D., 62 Wn. App. at 568).

[15] Clerk's Papers at 36.

placement decisions with M, and no phased increase in time with M without a formal modification of the parenting plan.

We review the provisions of a parenting plan for abuse of discretion.[16] When a trial court has acted as a factfinder, our role is to determine whether the findings are supported by the record and, in turn, if those findings support the court's conclusions of law.[17] We will accept the trial court's findings of fact so long as they are supported by substantial evidence.[18] Substantial evidence supports a finding when the record contains "evidence sufficient to persuade a fair-minded person of the truth of the matter asserted."[19] Evidence in the record is viewed in a light most favorable to the respondent, as are all reasonable inferences from the evidence.[20]

We note that the trial court fashioned this parenting plan faced with unusual circumstances. M had suffered serious physical injuries. The police had investigated both parents, cleared the father of criminal concerns, and forwarded a probable cause certificate to the prosecutor for possible criminal charges against

---

[16] In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014) (citing In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012)).

[17] Greene v. Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999) (quoting Organization to Preserve Agric. Lands (OPAL) v. Adams County, 128 Wn.2d 869, 882, 913 P.2d 793 (1996)).

[18] Matter of A.F.M.B., 1 Wn. App. 2d 882, 887, 407 P.3d 1161 (2017) (citing Feree v. Doric Co., 62 Wn.2d 561, 568, 383 P.2d 900 (1963)).

[19] Chandola, 180 Wn.2d at 642 (citing Katare, 175 Wn.2d at 35).

[20] In re Marriage of Zigler & Sidwell, 154 Wn. App. 803, 812, 226 P.3d 202 (2010) (citing Keever & Assocs., Inc. v. Randall, 129 Wn. App. 733, 737, 119 P.3d 926 (2005)).

the mother for first degree assault of a child, making a false or misleading statement to a public servant, and obstructing a law enforcement officer. The probable cause certificate, which included the police investigation report, was admitted only for background and not as substantive evidence. No witness testified to seeing any abuse of the child by the mother or by those around her. Both parents contemplated some form of phased restrictions on the mother's parenting role with increasing visitation and diminishing restrictions depending on the outcome of the criminal investigation. And, while this appeal was pending, there were material developments because the prosecuting attorney's office declined to file criminal charges against the mother for assault of a child.[21] With this background in mind, we turn to the parenting plan.

RCW 26.09.191(1) and .191(2) mandate limitations on a parent's decision making and visitation upon a finding the parent "engaged in . . . physical, sexual, or a pattern of emotional abuse of a child."[22] Subsection .191(3), by contrast, gives a court discretion to impose limits on any provision of a parenting plan when the court's findings of fact support imposing restrictions.[23]

---

[21] Wash. Court of Appeals oral argument, Beecher v. Meyers, No. 81788-4 (Nov. 3, 2021), at 0 min., 58 sec. through 1 min., 36 sec., http://www.tvw.org/watch/?clientID=9375922947&eventID=2021111029&startStreamAt=58&stopStreamAt=96&autoStartStream=true.

[22] Wagner, 496 P.3d at 746 (citing In re Marriage of Watson, 132 Wn. App. 222, 232, 130 P.3d 915 (2006)); RCW 26.09.191(1)(b), (2)(a)(ii).

[23] Id. (citing RCW 26.09.191(3)).

Citing In re Marriage of Watson,[24] Beecher argues restrictions imposed under subsection .191 are appropriate "only when substantial evidence demonstrates that a restrictive factor makes unrestricted involvement or conduct with the children likely to adversely affect them."[25] But, as the Supreme Court explained in Katare v. Katare, Watson does not stand for this broad conclusion.[26] Watson stands for the unremarkable proposition that "restrictions cannot be imposed for unfounded reasons."[27] As clarified by In re Marriage of Chandola, a specific finding linking the parent's conduct to harm is required under only subsection .191(3)(g), the catchall provision, because it does not specify inherently harmful conduct.[28] Because none of the restrictions here were imposed under the catchall provision, the question for each .191 restriction imposed is whether substantial evidence supports the findings of fact.[29]

A. Emotional Impairment

RCW 26.09.191(3)(b) allows imposing restrictions upon a finding of a parent's "long-term emotional or physical impairment which interferes with the parent's performance of parenting functions as defined in RCW 26.09.004." "Parenting functions" are defined in RCW 26.09.004(2) as "those aspects of the

---

[24] 132 Wn. App. 222, 233, 130 P.3d 915 (2006).

[25] Reply Br. at 18.

[26] 175 Wn.2d 23, 37, 283 P.3d 546 (2012).

[27] Id.

[28] 180 Wn.2d 632, 646-48, 327 P.3d 644 (2014).

[29] Greene, 97 Wn. App. at 714 (citing OPAL, 128 Wash.2d at 882).

parent-child relationship in which the parent makes decisions and performs functions necessary for the care and growth of the child." Examples of statutory parenting functions include "[m]aintaining a loving, stable, consistent, and nurturing relationship" and

> [a]ttending to the daily needs of the child, such as feeding, clothing, physical care and grooming, supervision, health care, and day care, and engaging in other activities which are appropriate to the developmental level of the child and that are within the social and economic circumstances of the particular family.[30]

Beecher testified to having been diagnosed with PTSD with symptoms of depression and anxiety. Her PTSD symptoms can be triggered by thinking about M's injury or about his hospitalization. Once they begin, she will "relive that over and over," becoming "depressed and upset."[31] If triggered, she soothes herself by "tak[ing] a quick breather to myself, [or by] listen[ing] to some music."[32]

Meyers testified that Beecher was an "amazing" parent before M's injury but has become less capable since.[33] He saw her become frustrated when she struggled to soothe M and needed to defer to him for help. Beecher showed "frustration instantly" and "no problem-solving" skills when M became upset.[34] Miranda Gracey, Meyers's girlfriend, explained Beecher left a visitation early once because she could not soothe M. Grogel testified that Beecher "would get

---

[30] RCW 26.09.004(2)(a), (b).

[31] RP (July 13, 2020) at 6.

[32] Id.

[33] RP (July 9, 2020) at 129.

[34] Id.

frustrated and upset" when M was cranky and "wasn't comfortable dealing with him getting upset."[35] If Beecher was unable to soothe M easily, then "she didn't really want to deal with it at that point," might not hold him, and would defer to others to soothe him.[36]

Two statutory parenting functions are attending to the child's daily needs and maintaining a nurturing relationship. The record shows Beecher struggles to meet M's emotional needs or be nurturing when her PTSD symptoms are triggered by her son becoming upset or cranky. Viewed in a light most favorable to Meyers, a reasonable factfinder could conclude that Beecher's emotional impairment interferes with her ability to perform parenting functions, and substantial evidence supports this finding of fact.

B. Substance Abuse

RCW 26.09.191(3)(c) allows restrictions on a parenting plan when the court finds "[a] long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting functions." Beecher argues the record does not support this finding.

In In re Marriage of Rostrom, this court upheld a trial court's restrictions under subsection .191(3)(c) due to a father's alcohol abuse.[37] After the couple filed for dissolution, the father crashed into several parked cars and was arrested

---

[35] Id. at 117-18.

[36] Id.

[37] 184 Wn. App. 744, 758, 339 P.3d 185 (2014).

for driving under the influence.[38]  The mother and her sister both testified about the father drinking heavily on weekends.[39]  A psychologist diagnosed the father with alcohol use disorder.[40]  The father denied ever drinking to the point of impairment.[41]  A parenting evaluator testified that the father should have limited time and no overnight visitations with his children due to his alcohol use until he could show six months of sobriety from clean urinalysis tests.[42]

Here, Meyers testified that Beecher would rely on others to care for M because she was lethargic, lazy, sleepy, and uninvolved while high.  But the evidence does not show a "long-term impairment" from smoking marijuana that affected Beecher's ability to parent.  Viewed most favorably to Meyers, the evidence showed Beecher smoked marijuana regularly while in a relationship with him, and her ability to parent was affected only when high.  A recent hair follicle test showed she had not used marijuana in the three months before trial.  Indeed, when not prevented from doing so by PTSD, Beecher regularly performed various parenting functions.  Unlike Rostrom, the record does not show a "long-term impairment" from substance abuse that interfered with Beecher's ability to parent. Substantial evidence does not support this finding.

---

[38] Id. at 757.

[39] Id.

[40] Id. at 757-58.

[41] Id. at 758.

[42] Id. at 755, 758.

C. Abusive Use of Conflict

Subsection .191(3)(e) allows restrictions when the court finds "[t]he abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development." Thus, a substantiated finding must show the use of conflict itself creates the danger to the child's development.[43]

In Burrill v. Burrill, this court upheld the trial court's imposition of restrictions due to a mother's abusive use of conflict.[44] After a couple filed for dissolution and disagreed about who should be the primary residential parent, the mother made unsubstantiated reports that the father abused alcohol and marijuana.[45] When the parents had an argument over their daughter's shoes, the mother unilaterally terminated the father's contact with their children.[46] And two weeks before trial, the mother made a misleading report to a pediatrician about the father sexually abusing their daughter.[47] This misleading report led to an eight-month delay of the trial and to the couple's children not being allowed to see their father for nine months, even though they had enjoyed being with him.[48] Because the mother

---

[43] Burrill v. Burrill, 113 Wn. App. 863, 872, 56 P.3d 993 (2002).

[44] 113 Wn. App. 863, 871-72, 56 P.3d 993 (2002).

[45] Id. at 866.

[46] Id. at 866-67.

[47] Id. at 867.

[48] Id. at 867-68, 872.

used her conflicts with the father to prevent her children from having a relationship with him, substantial evidence supported the trial court's finding of fact.[49]

Here, the trial court appeared to conclude Beecher engaged in an abusive use of conflict because she repeatedly accused Meyers of committing acts of domestic violence against her. Three different judicial officers, including the judge in the parenting plan trial, concluded her accusations were not credible.

Critically, unlike Burrill, Beecher did not use conflict to deprive M of his father. The Burrill mother used conflict to prevent the children from seeing their father because she had an argument with him. She also made a misleading report about the father harming their daughter, preventing the children from him.[50] The record here does not show Beecher's accusations were made in a way that presented a risk of psychological harm to M Because a substantiated finding under subsection .191(3)(e) requires a connection between the conflict and risk of serious damage to the child,[51] this finding of fact lacked substantial evidence.

### D. Neglect of Parenting Functions

RCW 26.09.191(3)(a) allows restrictions upon a finding of "[a] parent's neglect or substantial nonperformance of parenting functions." The court found Beecher "neglected her parental duties" but did not explain which duties or how they were neglected.[52] Meyers argues the neglect finding was supported based

---

[49] Id. at 871-72.

[50] Id. at 866.

[51] Id. at 872.

[52] CP at 10.

14

upon a combination of the abuse finding and the substance abuse finding. But the substance abuse finding was not supported by substantial evidence, and Meyers cites only inapposite authority to conflate "abuse" and "neglect" under RCW 26.09.191.[53] Based upon the record presented, substantial evidence does not support this finding.

E. Abuse

RCW 26.09.191(1) and .191(2) mandate limitations on a parent's decision-making and visitation upon a finding the parent "engaged in . . . physical, sexual, or a pattern of emotional abuse of a child."[54] When the court found Beecher had abused M, it relied upon the undisputed fact that "[t]here has been a referral to the Snohomish County Prosecuting Attorney from [the] Arlington Police Department."[55] Thus, the apparent basis for the trial court's finding of abuse was the existence of the certification for probable cause and referral to the prosecutor for possible criminal charges. But, subsequently, assault charges were not filed.[56] These unusual circumstances suggest it is appropriate for the court to revisit the abuse

---

[53] Meyers relies upon the definitions of "abuse" and "neglect" in RCW 26.44.020(1). That statute is expressly applicable "throughout this chapter," not throughout all of Title 26 RCW. Id. Meyers does not define "neglect" as opposed to "abuse" for purposes of RCW 26.09.191, and we need not do so to resolve this issue.

[54] Wagner, 496 P.3d at 746 (citing Watson, 132 Wn. App. at 232); RCW 26.09.191(1)(b), (2)(a)(ii).

[55] CP at 9.

[56] Wash. Court of Appeals oral argument, Beecher v. Meyers, No. 81788-4 (Nov. 3, 2021), at 0 min., 58 sec. through 1 min., 36 sec., http://www.tvw.org/watch/?clientID=9375922947&eventID=2021111029&startStreamAt=58&stopStreamAt=96&autoStartStream=true.

issue. As explained below, remand is necessary to revisit restrictions within the parenting plan and previously unknown evidence also makes it appropriate to revisit the question of abuse.

### F. Parenting Plan Restrictions

When substantial evidence supports a finding of abuse, then the restrictions in subsections .191(1) and (2) are mandatory.[57] RCW 26.09.191(1) requires supervised visitation, and RCW 26.09.191(2) requires limits on the parent's residential time. Restrictions under subsection .191(3) are discretionary.[58]

Here, the trial court crafted a parenting plan for a parent who posed a danger to her son due to neglect, the abusive use of conflict, long-term substance abuse, physical abuse, and a long-term emotional impairment. Because substantial evidence does not support several of the court's .191 findings, remand is required for the court to revise the parenting plan in accordance with Beecher's substantiated conduct and M's best interests. And because new facts about the risk of physical abuse have arisen since the parenting plan was entered, it is appropriate for the trial court to determine whether current evidence supports a finding of abuse under RCW 26.09.191(1) or .191(2).[59] On remand, the court is

---

[57] Wagner, 496 P.3d at 746 (citing Watson, 132 Wn. App. at 232).

[58] Id. (citing RCW 26.09.191(3)).

[59] See In re Marriage of Thompson, 32 Wn. App. 179, 186, 646 P.2d 163 (1982) (remanding for further proceedings on a parenting plan in light of new, material developments about mother's conduct and children's welfare during the pendency of appeal); cf. Zigler & Sidwell, 154 Wn. App. at 811-12 (explaining modification of a parenting plan can be justified by new evidence unknown to the trial court when the plan was entered).

not limited to the evidence previously before it and may apply its discretion to address any and all aspects of RCW 26.09.191.[60]

III.  Attorney Fees and Costs

Beecher requests attorney fees from this appeal pursuant to RAP 18.1 and RCW 26.09.140.  Under RCW 26.09.140, a court may award costs and attorney fees after considering the financial resources of both parties.  In considering the financial resources of both parties, we consider the needs of the requesting party and the other party's ability to pay.[61]  Each party has filed a financial declaration showing equivalent economic circumstances.  We decline to award attorney fees under RCW 26.09.140.

Pursuant to RAP 14.2, Beecher also requests the costs of preparing the record for appeal.  RAP 14.2 allows an award of costs "to the party that substantially prevails on review."  But costs should not be awarded "[i]f there is no

_____

[60] Meyers argues that the concerns of Beecher underlying her appeal can all be adequately addressed by means of a modification proceeding.  Whether or not that is possible, we conclude that under the unique circumstances of this appeal, a remand to revisit the parenting plan based upon supported .191 restrictions is a more direct and appropriate remedy.  See Little v. Little, 96 Wn.2d 183, 198, 634 P.2d 498 (1981) (remanding to trial court following reversal of a parenting plan to "look into the present circumstances of the children and their parents" to ensure the children's best interests were served); see also In re Marriage of Possinger, 105 Wn. App. 326, 335, 19 P.3d 1109 (2001) ("'The major purpose behind the requirement of a detailed permanent parenting plan is to ensure that the parents have a well thought out working document with which to address the future needs of the children.'") (internal quotation marks omitted) (quoting In re Marriage of Pape, 139 Wn.2d 694, 705, 989 P.2d 1120 (1999)).

[61] In re Marriage of Trichak, 72 Wn. App. 21, 26, 863 P.2d 585 (1993).

substantially prevailing party on review."[62]  Because Beecher does not substantially prevail, she is not entitled to costs.

Therefore, we affirm in part, reverse in part, and remand for further proceedings.

_____

WE CONCUR:

_____     _____

---

[62] RAP 14.2.